## GILBERT GRISWOLD, et a. *versus* JAMES CHANDLER.

When an executor or administrator has obtained license from the judge of probate to sell the personal property of the deceased, he is not bound to sell immediately, but is to sell in a convenient time at his discretion.

Executors and administrators are not bound to enforce doubtful claims at the expense of the estate. But if the heirs will give them indemnity for the costs, it is their duty to assert such claims.

They are bound to put into the inventory, and to account for provisions, that belonged to the deceased at the time of his death.

They are not at liberty to furnish articles of mourning to any of the family, at the expense of the estate.

They are to account for all the interest by them received, upon money belonging to the estate, and may be charged with interest, when they apply money to their own use, or unreasonably neglect to pay it over.

And they may be examined upon oath, touching the use, they may have made of the money.

They cannot be the purchasers of the goods of the deceased, at a less price than the appraised value in the inventory.

And they cannot be allowed for money by them expended for ardent spirits used at an auction of the goods of the deceased.

Griswold, et al.
v.
Chandler.

THIS was an appeal from a decree of the judge of probate, in this county, allowing the account of James Chandler, as administrator of the goods and estate of Gilbert Griswold, deceased. The appeal was taken by some of the heirs of the deceased. An auditor had been appointed to examine the account, who made a report, in which he stated all the matters in controversy between the parties, and all the evidence upon which they relied, in this case. The administrator was appointed in June, 1827, and presented the said account to the judge of probate, for allowance, on the first Tuesday of September, 1829. The estate was administered in the insolvent course, but was not, in fact, insolvent.

The cause was argued by *H. Hubbard*, for the appellee, and by *Joel Parker*, for the appellants.

The opinion of the court was delivered by

RICHARDSON, C. J. It is said, that the administrator ought to be charged with two pews in the old meeting house in Walpole, the value being, as stated in the inventory, $20.

It appears that the intestate had an interest in two pews in the gallery of the said meeting house, being the owner of one half of each; and that the administrator has not as yet disposed of that interest. But it appears, also, that the pews are of very little value, and not likely to find a ready sale; that no written evidence of any title in the intestate has been found, and that the place in the meeting house, where one of them is situated, has not been known until very lately, even to the family of the deceased. It may be conceded, that an administrator is bound to dispose of the personal estate in a reasonable

Griswold, et al
v.
Chandler.

time, and that if he fail in his duty in this respect, he may be held to account for it at the value stated in the inventory. Yet, still, it is the interest of all concerned in the estate that very considerable latitude of discretion should be allowed to him as to the selection of the time of sale. Otherwise, great sacrifices of the property must in many cases be made. And with respect to these pews, considering the nature and situation of the property and of the title, and all the other circumstances, we see no ground to impute to the administrator any negligence that ought now to render him chargeable with the value of the pews.

It is also said that the administrator ought to be charged with the value of three horses. But the horses are in the possesion of one of the heirs, who claims them as his own property, and have never come to the posession of the administrator. The evidence, reported by the auditor, shows that it is at least doubtful, whether the horses were the property of the intestate, at the time of his decease, and there is no ground for charging the administrator with their value at present. He was not bound to enforce a doubtful claim at the expense of the estate, merely because some of the heirs may have thought it well founded. If any of the heirs wish to have the question legally settled, let them give the administrator an indemnity against the costs and expenses, and then it will be his duty to assert the claim. 7 Pick. 250, *Andrews* v. *Tucker.*

It is contended, on behalf of the appellants, that certain provisions on hand at the decease of the intestate ought to be charged to the administrator.

The intestate died on the 2d June, 1827. The personal property was appraised on the 14th July, following. There were in the family of the deceased at the time of his death, fourteen persons. These were his wife, his son Calvin and wife with six children, his daughter, Mrs. Rebecca Luke, with two children, his son, George S.

and a hired man. The heirs were Gilbert, Calvin, George S. and Rebecca. Gilbert lived in Illinois.

The administrator requested the appraisers to appraise such property as they thought ought to be appraised, but the appraisers did not think there were any provisions that ought to be appraised, and they appraised none. There were some provisions on hand, but they were all consumed in the family.

We are, upon the whole, of opinion, that the provisions on hand ought to have been inventoried, and that the administrator must account for them. 4 Burn's Ecclesiastical Law, 238 and 257 ; Godolph. 152.

But before we charge him with any thing on this account, the value must be ascertained, and we shall give him an opportunity to call those who have consumed the provisions, to an account, and reserve this subject for future adjudication.

With respect to the sum of $94,54, paid for articles of mourning, we are of opinion, that sum stands on the same ground as the provisions. The administrator must have an opportunity to call those to an account who had it, and we shall reserve this subject to be adjusted at another day.

Another claim made by the appellants is, to have the administrator charged with the produce of the farm in the year 1827, for which he has not accounted.

On the 14th July, 1827, an agreement was made between the administrator, and the widow, with the consent of all the heirs except Gilbert, that the farm should be managed for that season by the widow and the administrator ; the widow to furnish one third of the labor and have one third of the produce ; the administrator to furnish the rest of the labor and to have the residue of the produce. The farm was accordingly so managed that season. The produce was appraised and amounted to $284,09. The administrator paid to the widow $99,51, being $4,82 more than one third, and has accounted for

the residue.    When the inventory was returned, the sum of $200 was decreed to the widow for her support, and afterwards $100 more was allowed to her by the judge of probate.

The administrator must account for the said sum of $4,82, which he has paid to the widow, beyond her proportion.

The arrangement made between the administrator and the widow, with the assent of the heirs, may well be considered as tantamount to a demand of dower on her part.   If no agreement had been made on the subject, it is fair to presume that a formal demand of dower would have been made.   A widow is, by the statute, entitled to damages for any unjust detention of her dower, which damages would of course be equal to the rents and profits of her third part, during the detention.   Jackson on Real Actions, 307.

We see no objection to the arrangement made between the administrator and the widow.   It might have been, and, under the circumstances, was, probably, a convenient course for all parties.

The sums decreed to the widow, by the judge of probate, have no connexion with her claim of dower. Those sums are to be taken into consideration when the judge of probate makes a decree of distribution.  1 Laws, 337.

There was an account in favour of the intestate against John Kimball, which was paid to the administrator's agent in July, 1830, and for which he must be charged, either in this or some future account.

Another claim made by the appellants is, to have the administrator charged with interest upon the money belonging to the estate, while it remained in his hands.

The auditor has made a calculation on this subject and finds a considerable balance against the administrator.   But notwithstanding all this, still there may be no just ground for charging him with interest.   It is very

evident from the nature of the case, that money must necessarily sometimes lie unemployed for longer or shorter periods in the hands of administrators. It is unavoidable. If it lie there without his fault, or negligence, and without being of any advantage to him, he is not to be charged with interest. The true rule is, that in all cases, where the administrator, without any just reason, or excuse, retains the money in his own hands, unemployed, when it ought to be paid over, in all cases where he receives interest for money which belongs to the estate, and in all cases where he applies money belonging to the estate to his own use, he ought to be charged with interest. It is believed that an administrator is never charged with interest except in these cases. 1 Pick. 530, *Stearns* v. *Brown* ; 13 Mass. Rep. 232, *Wyman* v. *Hubbard*.

And an administrator may be examined upon oath as to the times when he received, and the uses to which he put, the money belonging to the estate, and is bound to make a full disclosure of all the circumstances, so that it may be fully seen how far he is chargeable with interest. 1 Pick. 530 ; 6 ditto, 222, *Saxton* v. *Chamberlain*.

If an administrator refuse or neglect, when required, to make a satisfactory disclosure on this subject, it raises a strong presumption against him, and furnishes a very safe ground to charge with interest on all sums so long as they appear from his account to have remained in his hands.

The facts stated in the auditor's report, do not enable us to determine whether the administrator ought, in this case, to be charged with any interest. If the heirs suppose that they can show that he is chargeable with any interest upon the principles above stated, we think that they ought to have an opportunity to do it, and we shall reserve this subject for future adjudication.

Another sum which is said to be chargeable to the ad-

ministrator, is for a loss upon the sale of certain articles belonging to the estate.

There was an auction, at which the personal estate was sold. Due notice of the time and place of sale was given, many bidders attended, and all was conducted openly and fairly. But the administrator bought sundry articles at prices falling short, in the whole, of the appraised value, $14,12. For this sum the appellants hold him chargeable. And we consider it settled that he is by law chargeable for this sum. We do not believe that, in this case, the estate has lost any thing by reason of his being the purchaser. It is probably a gainer by it. But the rule which forbids him who sells in such cases, to be the purchaser, is a very safe and salutary rule, and cannot be disregarded. And it must be understood that where executors or administrators purchase goods at their own sales they cannot take them at a less price than the appraised value.

There are charges in the administrator's account to the amount of $12,20, paid for spirits used at the auction. These charges are wholly inadmissible. It is said to be customary to furnish spirits on such occasions. But we are satisfied, upon reflection, that no custom, however ancient it may be, or however widely it may have prevailed, can sanction such charges. We see no reason why such an expense should be thrown upon an estate, unless it be that a free distribution of ardent spirits has a tendency to render the sales more productive. But the furnishing of spirits for that purpose is neither honest nor honorable. It is time the custom was abolished.

Various other objections have been made to the account as allowed by the judge of probate, but they do not seem to us to be sustained by the auditor's report. These heirs have quarrelled among themselves, and also with the administrator, and have involved him in considerable expense and trouble. It does not seem to us, that

the judge of probate has, under the circumstances, al-
lowed him any thing more than was just and proper for
his trouble and expenses.