## SANBORN *v.* GOODHUE, EX'R.

A gift of chattels, accompanied by delivery, is valid and irrevocable, unless it be prejudicial to creditors, or the donor was under a legal incapacity, or was circumvented by fraud.

Where such a gift is made, accompanied by delivery, the subsequent execution of a will by the donor does not operate to make void the gift, even though the property may fall within the provisions of the will.

Where A. made an assignment in trust, for the benefit of his minor children, of certain promissory notes, and indorsed and delivered the same to the trustee, and afterwards made his will, giving his wife one-third of his personal property and her dower in his real estate,—*Held*, that the wife was not entitled to any share of the notes so given to his children.

An executor or administrator is not bound to enforce the collection of a doubtful claim, at the expense of the estate, without being indemnified for costs, by the heirs at law, or those interested in the collection.

APPEAL, from the decree of the judge of probate of this county, allowing the account of Converse Goodhue, executor of the last will and testament of Asa Paddleford, deceased.

The following facts were agreed upon by the parties.

Asa Paddleford died testate, April, 1849. On the 16th of March, 1849, he executed his last will and testament, giving one-third of his real estate to his wife, Susan Paddleford, during the term of her natural life, and, after her decease, to his two children, James H. Paddleford and Wyman H. Paddleford, and their heirs and assigns forever. He also gave and bequeathed to the said Susan one-third part of all his personal property. All the residue of his real and personal estate whatsoever, after the payment of his debts, he gave to his said children, and in case of their decease before twenty-one years of age, to his sisters. He appointed Converse Goodhue, Esq., executor of his will.

On the same day, March 16th, 1849, and at the same sitting, but before he executed his will, he placed in the hands of Nathaniel W. Westgate, Esq., four promissory notes, the principal of which amounted to $2,800, for the benefit

of his said children, and upon the terms and conditions expressed in writing, as follows:

" Know all men that I, Asa Paddleford, have given, granted and assigned, and do hereby give, grant and assign unto N. W. Westgate, the following property, to wit: One note, dated April 3d, 1848, signed by Nathaniel Wheeler, Colby C. Benton and Watson K. Eldridge, payable to me or order, on demand, with interest, annually, for one thousand dollars.

One note, dated April 12th, 1848, signed by Asa Fitch, and payable to me or bearer, for five hundred dollars, on demand, with interest, annually.

One note, dated June 29th, 1848, signed by Matthew Bryant and James Follansbee, selectmen of Enfield, payable to me or bearer, for eight hundred dollars and interest in one year from date.

Also, one other note, dated March 25th, 1847, for five hundred dollars, signed by Abel Lowe, jr., and payable to me or order, on demand, with interest, annually.

In trust, that the said Westgate will account and pay over to my children, James H. Paddleford and Wyman H. Paddleford, at their respective ages of twenty-one years, the avails of said property, and in case either of them shall die before the age of twenty-one years, then to the survivor of them; and in case both of them shall die before twenty-one years of age, then to my four sisters, Huldah Currier, Betsey Smith, Hannah Baker and Sophia Mason. And that the said Westgate will collect said notes whenever he thinks proper, and lend and place out at interest, upon good security, or otherwise invest in stocks, or improve, according to his discretion, all or any part of the moneys obtained, and to apply so much thereof as he may deem necessary and beneficial to the support, maintenance and education of my said children, until they arrive at said ages of twenty-one years, respectively, and then to account and pay over such principal, interest, stocks or income as shall arise or accrue

by means of said property hereby given, deducting therefrom a reasonable allowance for his time, trouble, expenses, and commission on said moneys, and for taking care of the same; and that Westgate shall not be accountable for more of said moneys than he shall actually receive, or come to his hands, or for any loss which shall happen of said moneys or securities, &c. that he may take, so as said loss happen without his wilful default and neglect; and that said Westgate may discharge himself of the trust herein mentioned whenever he may choose, by paying over to the guardian or guardians of my said children as above stated, and to be held by them upon the same trust.

ASA PADDLEFORD.

March 16th, 1849."

It did not appear that Westgate entered in any written contract or agreement with Paddleford, relative to the notes or the avails of them, but he did upon the same day and at the same time receive the notes from Paddleford, for the purposes and upon the conditions specified in said articles of trust; and he made and delivered a copy of said articles to said Goodhue. Neither did it appear that Westgate gave any receipt or security for the notes. Those which were payable to order were indorsed by Paddleford.

This arrangement was made without the knowledge or consent of his wife, Susan Paddleford, and while Asa Paddleford was sick of consumption, of which he died.

Said notes remained in the hands of Westgate at the time of the decease of Paddleford, and no change had been made in the condition of them; and they, or the avails of them, still remain in his hands, and are supposed to be good. The said children of Asa Paddleford were, at the time of his decease, respectively, at the ages of four and six years.

The amount of Paddleford's estate, as shown by the inventory returned into the probate office, was $7,027,41, in

addition to the amount due on said notes, which were not included in the inventory. His debts did not exceed $200.

Goodhue, the executor, has never been requested to collect said notes of Westgate, or of the makers, nor has he been offered any indemnity against costs.

Goodhue filed in the probate office the account of his administration, and at the term of the probate court, holden on the 15th day of June, 1852, the appellants—the said William C. Sanborn having in the mean time married the widow of said Asa Paddleford—appeared and objected to the allowance of the executor's account, for the reason that he had not collected the amount due on the notes in Westgate's hands, and filed their petition, praying that the executor should be decreed to be charged with the amount of said notes, which petition was refused and disallowed by the court of probate.

From the decree of the probate court, disallowing the prayer of said petition, the said William C. Sanborn and Susan Sanborn, his wife, appealed to this court, and filed their bond and the reasons of their appeal as by law required, and also caused notice thereof to be duly published according to law. The reasons for the appeal were as follows :

" 1. Because by said decree the said Goodhue is discharged from his legal obligation to demand, collect and receive from the said Westgate, or from the several makers thereof, said notes and securities, with the interest thereon, or the avails thereof, and to account for and distribute the same, agreeably to the provisions of said Paddleford's said last will and testament.

2. Because by said decree the estate of said Asa Paddleford is not distributed agreeably to his said last will and testament.

3. Because by said decree the said William C. Sanborn, and Susan, his wife, are deprived of her share in said notes and securities and interest, or the avails thereof.

4. Because the said Asa Paddleford gave one-third of his estate to the said Susan, by his last will and testament, and by said decree she is deprived of said third of said notes and securities, amounting to $2,800, with interest, or the avails thereof, although the same are a part of his estate.

5. Because by said decree said court of probate refused to require the said Goodhue to account for or to charge him with the following notes, or the avails thereof, part of said Asa Paddleford's estate, upon the settlement of his account as executor."

The same notes are then enumerated as those set forth and described in the articles of trust to Westgate.

Upon this agreement of facts, it was submitted to this court whether the executor should be charged with the notes or any part of the same.

*D. Blaisdell*, for the appellants.

The assignment to Westgate is void, having been made for the purpose of evading the provisions of the statute relative to the dower, &c. of the widow. Comp. Stat. ch. 175, §§ 3, 12, 13.

The husband cannot, by will, deprive his widow of her dower in his real estate, and her third or share in his personal estate; yet if this assignment should be sustained, it will enable him to deprive her of her share in his personal estate, by an act contemporaneous with his will, and done manifestly for the purpose of evading the provisions of the statute. It will only be necessary for him to place his personal estate, or such part of it as he may please, in the hands of some friend, to hold for such trusts as he may see fit to indicate.

This assignment partakes of the nature of a fraudulent transaction. It was not made for the purpose of securing a necessary or suitable provision for the children, but to evade the statute, and to deprive the widow of her proportion of the personal estate. If he had attempted to do this

by his will, she would have waived the provision made for her, and taken her share under the statute.

Being an attempt to evade the statute enacted for the protection of the widow, and to guard her against the consequences of any motives which might induce her husband, in the final disposition of his estate, to leave her without an adequate support, it is a fraud upon her rights.

It is not an assignment made to discharge a legal or moral obligation. On the contrary, it is in conflict with the moral, if not precisely the legal obligation, which rests upon every husband to provide, according to his ability, for the support of his widow as well as his children. The statute has wisely determined the widow's proportion, leaving it discretionary with the husband whether she shall receive more, but depriving him of the power to compel her to take less. By the assignment, in this case, if sustained, she receives less and the children more than the statute intended.

There can be no moral obligation, and certainly no legal one, to make a provision for the children larger than what they would receive by the statute of distributions, if it must be done by abstracting from the portion of the widow, whose rights are so carefully guarded by the statute.

It cannot be regarded as a *bona fide* transaction. It was made for the purpose of evading the statute, under pretence of making provision for the children. If it was not, then no rational explanation of it can be given. It certainly does not increase the security of the fund, or furnish greater facilities for the application of it to the uses indicated.

It is not like the ordinary case of an advancement or gift made to a child, which may well be supposed to be made without any view to diminishing the legal provision for the widow; but, on the contrary, was made for the very purpose of reducing that provision.

2. The assignment was, in law, revoked by the will. There was no legal or moral consideration to sustain it. If

it was, in point of time, executed prior to the will, it was at the same sitting, and so nearly at the same moment, as to warrant its being treated as a part of the same transaction, and as not having taken effect until the execution of the will. So that the court may well consider the will as having been executed, and amounting to a revocation of the assignment before the latter took effect, or at the time of its execution, and before any legal rights accrued under it.

There having been no consideration for the assignment, it was subject to be revoked at the will of the assignor, at any time before the parties had been placed in such a situation that their rights would be prejudiced by the revocation. Nothing of the kind had occurred at the time of the execution of the will, and that was a revocation of it.

3. The assignment is void, having been made inconsiderately, and under such circumstances as to raise the presumption that the deceased was not in a condition to understand the nature and effect of the transaction. He had been prostrated by a lingering disease, and actually died in about three weeks of consumption, which ordinarily, towards its close, at least, prostrates the mind as well as the body; and without supposing any improper influence to have been exerted over him, it is not unreasonable to suppose that he may not have considered the arrangement as carefully as he would have done if his mind had not sunk under the exhausting effects of his disease.

Upon referring to the terms upon which the property was placed in the trustee's hands, the court will observe the extraordinary manner in which his liability is limited; so that there is no security remaining, except in the good faith of the trustee. It certainly seems to indicate a want of the ordinary caution and prudence exhibited in such cases, and falls altogether short of furnishing the safeguards which the law requires.

*Kittredge*, for the executor.

Did the property in the notes pass? This is the true and only question. They were assigned to Westgate, in trust for others, and delivered, and the title passed, so that the donor could not afterwards recover it. The assignment and delivery constituted a valid gift, according to all the writers. It was subject to the rights of creditors, but to no others. It is a new idea that a person must consult his wife in regard to the disposition of his property. 2 Kent's Com. (2d ed.) 438; *Frink* v. *Cox*, 18 Johns. Rep. 145.

This, at most, is a voluntary conveyance for his children. It appears to us that there can be no question about it. Here was an absolute gift and delivery before the will, and, we think, the case of *Marston* v. *Marston*, 1 Foster's Rep. 573, settles the question.

The transfer and delivery would have been good, *causa mortis*. 2 Kent's Com. (2d ed.) 444.

A voluntary conveyance is good against an heir at law. *Kimball* v. *Eaton*, 8 N. H. Rep. 391.

If the assignment and delivery passed the notes, as we say it did, there is an end of the case.

The case finds no such fact, as is stated in the first point upon the other side. Their second point comes to this, that a man cannot give away his personal property, in his life time, without the consent of his wife. This is, in fact, the whole ground of the other side. It is their whole foundation. But we say the wife has no such rights.

We do not go upon the ground that any consideration was necessary but love and affection. And here was no squandering of property, but a gift to those who were dear to a father.

But we say, further, that the executor was not bound to assert a doubtful claim without an indemnity. *Griswold* v. *Chandler*, 5 N. H. Rep. 492; *Andrews* v. *Tucker & a.* 7 Pick. 250.

EASTMAN, J. There is no suggestion, either in the case or the argument of counsel, that any fraud was practised upon Paddleford, in disposing of the notes in the manner in which he did; so that the distinct question is presented whether a man can give away his personal property to his children, in anticipation of his death, when such gift will reduce the amount which would otherwise fall to his widow.

It is well settled that a gift of personal property, accompanied by delivery, is valid and even irrevocable, unless it be prejudicial to creditors, or the donor was under a legal incapacity, or was circumvented by fraud. 2 Kent's Com. 440; *Smith* v. *Smith*, 7 C. & P. 401; *Marston* v. *Marston*, 1 Foster's Rep. 573.

Delivery is essential, both at law and in equity, but when the article is once delivered the gift becomes perfect. 2 Kent's Com. 438; *Cook* v. *Husted*, 12 Johns. 188; *Marston* v. *Marston*, before cited.

The delivery must be actual, so far as the subject is capable of delivery; and it must be the true and effectual way of obtaining the command and dominion of the property. If the thing is not capable of actual delivery, there must be some act equivalent to it. Not only the possession but the dominion of the property must be parted with. 2 Kent's Com. 439; *Noble* v. *Smith*, 2 Johns. 52; *Hawkins* v. *Blewitt*, 2 Esp. 663.

If the thing given be a chose in action, incapable of transfer without an assignment, the law requires that an assignment, or some equivalent instrument be made, and the transfer must be actually executed. *Hooper* v. *Goodwin*, 1 Swan. 486; *Picot* v. *Sanderson*, 1 Dever. 309; 2 Kent's Com. 439.

According to the authorities, the gift, in this case, lacked no element of perfectness. The notes were duly assigned by an instrument, in writing, stating the object of the trust, and they were indorsed and delivered to the trustee; and it seems to us that, in principle, it is difficult to distinguish

this case from that of *Marston* v. *Marston*, in which it was held that where property in chattels passes by a gift, accompanied by delivery, it cannot be reclaimed by the subsequent execution of a will by the donor, bequeathing the property to another person.

Paddleford had no creditors to interfere with the trust, and there is no complaint from that source. Neither was there any necessity for a consideration; and the natural love and affection of a father for his children would, in ordinary cases, be a sufficient reason for the gift. There is, however, something rather unusual in the course pursued in regard to this property; still, there is nothing disclosed in the case from which we can infer the reason that induced it. Had the assignment not been made, about $1,000 of the property, put into Mr. Westgate's hands, would have gone to the appellants. Perhaps Paddleford thought that his children, being very young, would not be any better provided for, even with the aid of the trust property, than his wife would be with her third of the balance. Perhaps his wife was incapable of transacting business judiciously, and he was apprehensive that the property might be squandered or lost, for the want of good management or proper care. Or there may have been other reasons that would induce an affectionate father to take the step he did, to provide for his tender and almost helpless offspring.

We are aware that this principle, carried out, would put it into the power of a husband to deprive his wife of all share of his personal property after his decease; and we are not prepared to say that a husband might not take such a course with his personal property, by depriving his wife of all share in it, as would justify a court in holding, upon very slight evidence, that he must have been circumvented by fraud, or been under some aberration of mind. But it will be time enough to pass upon such a question whenever it shall arise, which, happily for the marriage relation, will very seldom, if ever, occur. No husband, who has received

from his wife that treatment which the relations between them deserve, and who witnesses her anxious solicitude and untiring watchfulness, as sickness prostrates his frame and threatens to terminate his existence, will fail to make all that provision for her which his ability shall permit, and which his judgment shall dictate.

In addition to these considerations, which go to the merits of the appellants' claim, there is another difficulty under which they labor, in attempting to charge the executor with these notes. The claim for them was certainly very doubtful, according to the adjudged cases in our own State, and it was not the duty of the executor to endeavor to collect them at the expense of the estate, without being indemnified for the costs. An executor or administrator is not bound to enforce a doubtful claim merely because some of the heirs, or those interested, may think it well founded. *Griswold & a.* v. *Chandler*, 5 N. H. Rep. 492; *Andrews* v. *Tucker*, 7 Pick. 250.

We are all of opinion that the executor acted correctly in the premises, and that the decree of the judge of probate must be affirmed.