REYNOLDS *et al.* *v.* STANTON, executor, *et al.*

No. 8410.   FEBRUARY 12, 1932.

*N. M. Reynolds, W. K. Miller,* and *W. Inman Curry,* for plaintiffs.

*Callaway & Howard, Hull, Barrett & Willingham, Pierce Brothers,* and *John M. Graham,* for defendants.

BECK, P. J. (After stating the foregoing facts.)

■ Under the facts appearing in the record from the pleadings and admissions made in court, the court was authorized to reach the conclusion that upon consideration of the testamentary scheme as set forth in the wills and codicils attached to the petition, "a charity of the character contemplated by the testators, as shown by their wills and codicils, can be established and maintained at the place and with the funds provided for that purpose." From the record it appears that there is, in addition to 100 acres of improved land referred to as "Marylin," now available for charitable uses provided in the wills under consideration funds aggregating not less than $260,000, and this court can not say that the court below erred in holding that the sum of money and the other property were sufficient to maintain the charity referred to. In one item of the codicil to the will of L. C. Hayne we find this language: "I will and direct that said incorporated board of trustees shall thereupon establish the said hospital on said tract of land, employing for that purpose my summer residence thereon and such other buildings as they may deem necessary to erect thereon." Here the charitable purpose is definitely expressed, and the word "hospital" as used in the will and codicil is to be taken in connection with the provision for operating the summer home, etc. The wills and codicils under consideration present a sufficiently harmonious testamentary scheme originally set forth in the will of L. C. Hayne in 1911 and subsequently ratified in his codicil which was executed in 1913, and thereafter ratified and

approved in the will of his sister, Mary Anderson, executed in 1925, and the codicil thereto executed in 1926. The testamentary scheme in the mind of the sister was substantially the same as that in the mind of the testator when he executed his will and the codicil thereto, and there can hardly be a question as to the purpose of the testator and testatrix to devote the residuum of their respective estates to the eleemosynary institution referred to in their wills and codicils, it being recited in the will of Mary Anderson that the devise contained in her will is "in order to co-operate in so laudable an enterprise," having reference here to the devise previously made by her brother, L. C. Hayne. The sister and brother both had the intention and charitable purpose of establishing an institution "for the relief of sick and disabled white persons;" and it is manifest that it was the wish of the testator, Hayne, that those unfortunates of the class referred to by him "who are afflicted with incurable diseases or disabling injuries that are incurable shall always be given the preference in admissions to said hospital, and that the same should be mainly a hospital for incurables." In the will of Mary Anderson reference is made to the institution provided for in the will of her brother as "a hospital and convalescent home for the sick and disabled persons of Richmond County, and particularly for such as might be termed 'incurables;' " and there are other expressions used in the wills which bring out with clearness and definiteness the scheme which they had in mind.

Without entering into any discussion of the doctrine of cy pres, as set forth in our Code and developed and construed in the decisions rendered by this court, we are satisfied that there is no oc- for the application of that doctrine to the facts of this case. The court below took this view of it, and was authorized so to do, under the facts in the record. It may be true that with the fund of $260,000 and the other property the trustees may not be able to maintain and operate a general hospital upon a large scale; may not be able to operate upon a scale sufficiently extensive to enable them to operate and treat all members of the class or classes which are to be benefited by the charitable scheme of the testator and testatrix; but the fact that they can not receive all the members of that class, if that were shown by this record, would not require a holding by the court either that the entire scheme must be aban-

doned, or that the cy pres doctrine must be applied; but the court below very properly took the view, that, "should the trustees for any reason which may hereafter arise find it impossible to comply with the testamentary scheme, it would then be in order for them to petition the court for direction as to carrying out the charitable intent in a manner next most consonant to that provided by the testator and testatrix, and in a manner that will carry out the joint charitable purposes as expressed in said wills and codicils."

■ After the writ of error reached this court and was duly filed, other documents containing certain admissions relating to the amount of funds actually on hand were filed. These can not be considered. They are not a part of this record, and could not be made a part of it by any agreement. The record will be passed upon as it stood at the time of the ruling and judgment excepted to; and the motion to amend the bill of exceptions in this case is denied.

In view of what we have said, the judgment of the court below must be *Affirmed. All the Justices concur.*