183 So. 393

NOBLE et al. v. FIRST NAT. BANK et al.

7 Div. 502.

Supreme Court of Alabama.

June 9, 1938.

Rehearing Denied Oct. 6, 1938.

C. H. Young, of Anniston, for appellees.

Willett & Willett and Rutherford Lapsley, all of Anniston, for appellants.

BOULDIN, Justice.

Susie Parker Stringfellow by her will devised her residence and grounds, 8 acres, in the City of Anniston, in trust, subject to a life estate in favor of her surviving husband, for use as a public hospital for the people of the City of Anniston, and devised and bequeathed her residuary estate, real and personal, in trust, the income to be devoted to the equipment and operation of the hospital to be known as Susie Parker Stringfellow Memorial Hospital.

The issue on this appeal is whether this charitable trust can and shall be given effect, or, by reason of depletion of the assets from the values in the mind of the testatrix has it become impractical to accomplish the purposes of the trust, and should the legacy be held to have lapsed, and the property held to revert to the heirs?

The pertinent provisions of this interesting will (Third, Sixth, Eighth, Ninth, Tenth, Eleventh, Twelfth, and Fourteenth paragraphs) appear in full in the report of the case.

The husband's life estate in the residence property and in the income from the residu-

ary estate, having terminated, the Hospital Board of Trustees has been duly organized under the terms of the will. This Board consists of leading men and women of Anniston, with admitted ability and experience, who stand ready to proceed with the needed adjustments, equipment, and operation of the Hospital.

The First National Bank of Anniston, trustee under the will, stands ready to convey the hospital site to the Hospital Board, and to pay over to said Board the accumulated income devoted by the will to hospital purposes, and to execute its continuing trust, when advised by decree that it may lawfully do so.

One primary purpose of the testatrix was to devote her large two-story residence and its ample well located grounds to the use of the people of Anniston as a hospital.

Although the will designates it as a "public hospital," one "for the use of the public without gain or profit," very clearly the will does not contemplate a hospital adequate to accommodate all in need of hospitalization, or no hospital at all.

The residence is made the basic hospital unit. Further enlargement is left to the discretion of the Hospital Board, with a limitation on the amount that may be expended from the corpus of the residuary estate.

Mandatory requirements of the will are that the hospital shall bear the designated name; that the grounds shall remain intact and the Hospital Board shall employ $600 per annum in their upkeep; that $1,200 per annum shall be paid over to the Hospital Board and used in the maintenance of two memorial charity beds, and the remainder of the income, whatever it be, shall be paid over to the Hospital Board for the support and maintenance of the hospital; that the hospital be open to all reputable physicians who comply with reasonable regulations; and, in certain contingencies, free hospitalization shall be given the nephews and nieces of the testatrix.

On the issue of the reasonable prospect of maintaining a permanent hospital as contemplated by the will, the trial court heard the witnesses orally, and his finding is to be accorded the usual presumption.

We note that the will, itself, provides the contingency on which the bequest shall lapse and the property revert to the heirs. See Tenth Paragraph of will.

No extended discussion of the evidence will be indulged. Suffice to say it appears there is now an accumulated net income in the hands of the trustee, Bank, available to the Hospital Board, some $10,000, a sum sufficient to make essential adjustments, provide necessary equipment, and provide some operating capital.

It further appears the appraised value of the securities constituting the major part of the residuary estate is some $98,000, besides realty assessed for taxes at some $28,000, but at present yielding little or no net income.

That net income has risen from $2,755.52 in 1933 to $5,571.03 in 1936. Only two-thirds of such income is available until after the death of Mrs. Hagemeyer. A further sum of $10,000 will come into the corpus of this estate after other life charges thereon are terminated.

Giving due consideration to the character of the securities, depreciation from first appraisal, and the various suggested contingencies which may arise, we are in full accord with the trial judge in holding there is no good reason to abandon the hospital project, defeat the will of the testatrix, and divide the estate among the heirs.

The testatrix, by her will, enlisted the churches and the medical profession, agencies in sympathy with these humane purposes, with the evident intent of making her gift a useful and permanent benefaction to the people of her city. There is no inhibition against obtaining other benefactions, or making further enlargements, when practical, so long as the terms of the will are not violated.

It is not a question of the application of the cy-pres doctrine, which is not recognized in this state. A hospital set up, managed, and functioning for the purposes named in the will, is strictly within its terms and spirit if it be conceded the testatrix expected or hoped her estate would furnish a more bountiful income.

Courts of equity look with favor on charitable trusts of this character and will sustain them by the application of the doctrine of equitable approximation, if need be. Lovelace v. Marion Institute, 215 Ala. 271, 110 So. 381; Dunn v. Ellisor, 225 Ala. 15, 141 So. 700; State ex rel. Carmichael, Atty. Gen. v. Bibb, 234 Ala. 46, 173 So. 74; Sparks v. Woolverton, 210 Ala. 669, 99 So.

102; Jones' Unknown Heirs v. Dorchester, Tex.Civ.App., 224 S.W. 596; Reynolds v. Stanton, 174 Ga. 340, 162 S.E. 783.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.