1 So.2d 289

**NOBLE et al. v. FIRST NAT. BANK OF ANNISTON et al.**

**7 Div. 635.**

Supreme Court of Alabama.

March 27, 1941.

Willett & Willett and Rutherford Lapsley, all of Anniston, for appellants.

86

Knox, Liles, Jones & Blackmon, of Anniston, for appellees.

GARDNER, Chief Justice.

In Noble v. First National Bank, 236 Ala. 499, 183 So. 393, 396, the salient features of the will of Susie Parker Stringfellow are to be found and reference thereto as set out in the report on former appeal will suffice all purposes here.

It was there insisted that the estate of Susie Parker Stringfellow had suffered so great a shrinkage in value from the date of the execution and probate of the will in 1920 to the time of the falling in of the life estate of the husband, that no reasonable prospect remained for the establishment and maintenance of a hospital for the City of Anniston as contemplated by the will, and of consequence the project should be abandoned and the estate divided among the heirs.

Upon due consideration of the evidence this insistence was rejected with the observation that "we are in full accord with the trial judge in holding there is no good reason to abandon the hospital project, defeat the will of the testatrix, and divide the estate among the heirs".

As will be observed from the reading of the will the testatrix made careful and rather elaborate provisions for selection of suitable trustees. These trustees have been chosen and the Board of Trustees duly organized, consisting, as said on former appeal, "of leading men and women of Anniston, with admitted ability and experience, who stand ready to proceed with the needed adjustments, equipment, and operation of the Hospital".

The hospital has been established and for some time has been in full operation. The trustees have used no part of the corpus of the estate, but have operated this hospital on the income, with a remaining surplus, and the accumulated income has shown a marked increase. True there have been secured contributions from the City of Anniston and the County of Calhoun, and the State through its Health Department likewise makes a contribution. But as observed on former appeal "there is no inhibition against obtaining other benefactions, or making further enlargements, when practical, so long as the terms of the will are not violated".

That the hospital has been most successfully operated clearly appears from its financial status, especially in view of the rather extensive good accomplished, all of which reflects much credit upon the Board of Trustees who have evidently given much of their time and thought to this worthy project.

But, say the heirs, the hospital established is for tubercular patients only which is unauthorized by the will, as the testatrix intended the maintenance and operation of a general hospital and no other for the City of Anniston. The definition of a hospital established by the proof and uncontradicted was as follows: "An institution for the reception, care, and medical treatment of the sick or wounded; also the building used for that purpose".

Mrs. Stringfellow in her will made no requirement for a general hospital. She merely provided for a hospital "for the use of the public without gain or profit". The evidence in this case, without serious conflict, discloses that the hospital now in operation by the Board of Trustees is a public hospital and well within the provisions of this will. True the treatment is confined to tubercular patients who may be treated with reasonable expectancy of improvement. But the hospital is open to the public of the City of Anniston and the proof is that it is being operated well within the income and practically on a charity basis.

Those in charge have the latest equipment and are giving the most modern and effective treatment. There are at present only fifteen beds. But the treatment and cure of a single patient does not tell the whole story of public good received. For every such case there is removed a source of infection to twenty or thirty contacts.

Merely because the hospital facilities are limited presents no argument against the theory that it is a public hospital and devoted to a public use. By analogy the cases of State v. Housing Authority, 190 La. 710, 182 So. 725; Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 A. 834; Brammer v. Housing Authority, 239 Ala. 280, 195 So. 256, are in point and the opinion of this court on former appeal is properly to be interpreted to like effect.

If it should be conceded for the purpose of this case that the testimony of Mrs. Houser as to a conversation with testatrix prior to the execution of the will comes within the influence of National Jewish Hospital v. Coleman, 191 Ala. 150, 67 So. 699, yet it would not suffice to sustain appellant's contention in this regard. This will was drawn with care and evidently by a skilled hand. Uppermost in the mind of testatrix was the use of her home place for a hospital for her native city, one that would fill a public need. If at that time she had an indefinite idea as to a general hospital she did not so express it in the will and we can find no foundation in all the proof justifying an intention on her part to so restrict the trustees, whose selection was provided for with such meticulous care.

The principle is well settled that charitable trusts are especially favored by courts of equity and all reasonable intendments, consistent with the terms and purpose of the gift, will be made in support of their validity. Sparks v. Woolverton, 210 Ala. 669, 99 So. 102.

"Public charities indefinite in terms are necessarily limited in their administration by the amount of the foundation (or funds available). Where the founder does not provide a rule or order of selection, there is, therefore, in every public charity a necessary power of selection of beneficiaries in the trustees". Woodroof v. Hundley, 147 Ala. 287, 39 So. 907, 909.

Perhaps, if need be, resort in this case might be had to the doctrine of equitable approximation. Sparks v. Woolverton, supra; Dunn v. Ellisor, 225 Ala. 15, 141 So. 700; Lovelace v. Marion Institute, 215 Ala. 271, 110 So. 381; Noble v. First National Bank, 236 Ala. 499, 183 So. 393. But we conclude that resort to that doctrine is here unnecessary as we are well persuaded the testatrix here did in fact intend to leave the selection of the character of hospital to be established and maintained to the wise discretion of the trustees whose careful selection she evidently felt would insure a proper benefaction for the City of Anniston and a public hospital that would serve as a suitable memorial.

There is not here a diversion of the funds by the trustees to another use, as argued by appellants, citing among other authorities Crim v. Williamson, 180 Ala. 179, 60 So. 293; Graff v. Wallace, 59 App. D.C. 64, 32 F.2d 960; Eliot v. Attwill, 232 Mass. 517, 122 N.E. 648.

On the contrary, we are persuaded the trustees have acted well within the terms of the will and in full accord with the intent of Mrs. Stringfellow. The mere fact that the will makes provision for free hospitalization to her nephews and nieces, should necessity arise therefor, presents no ground for argument to the contrary. If any of them are stricken with tubercular trouble this part of the will may come into

play. But we can see no basis for the insistence that this expressed interest in these relations can serve to indicate a general hospital was intended and none other. Indeed the proof is to the effect that the trustees would operate a general hospital. But the committee composed of physicians looked carefully into the matter and their report that a tubercular hospital was the prime need and would serve the greater good was accepted and adopted. There already existed in Anniston a general hospital with charity wards and it was thought that with the limited income at hand and the further fact that a general hospital would result in more or less competition with the one operated by the City of Anniston, it would be wiser to meet this particular need and establish a tubercular hospital.

The committee had many consultations, including the State Health officials, before making the decision. That this hospital is meeting a great need and doing splendid work is proven beyond all question. The two charity beds are provided as the will directs and designated for those named in the will. Indeed most of the hospitalization is charitable work. At the entrance of every street surrounding the hospital there is posted a sign reading "Susie Parker Stringfellow Memorial Hospital". And the proof shows that the grounds of the hospital and two beds are being maintained as the will directs.

But we need not further pursue the discussion as we are well convinced this tubercular hospital is within the language of the will and the intent of the testatrix and that the trustees are acting in accord therewith.

■ Much argument is advanced to the effect that the arrangement with the State Health authorities resulting in financial aid by the State, Gen. Acts Regular Session 1931, p. 446; Gen. Acts Regular Session 1935, p. 1097, has likewise resulted in the abandonment of the control of the hospital by the trustees. Though the argument is forcibly presented, yet our study of the record is not persuasive that it is sufficiently founded on facts. True the State Health authorities stipulate for fifteen per cent of the beds (two as now operated) should be open in emergency cases coming in from another county. But no such call has as yet been made. But even in such cases the county from which the patient comes is expected to pay the cost and it is important to note also that even the arrangement made with the State is subject to cancellation at any time. But the advantage to the hospital by this arrangement is, so evident, and the successful effort of the trustees to enlist the State Health authorities in the maintenance of this hospital is so commendable, that we feel further discussion of this insistence is unnecessary.

All the proof shows that the trustees employ and may discharge any one in the service, incur and pay the bills, employ and discharge nurses as well as the superintendent, and the trustees, through this selected committee of doctors, adopt rules for admission of patients and general supervision over their welfare. And it is clear enough any supervision of State Health officials was for the more successful operation of the hospital and with no purpose whatever to interfere with its management.

The Board of Trustees, according to the proof in this record, all along has and now exercises full control over this hospital. There has not been the slightest indication of any abandonment of the project. But on the other hand the Board of Trustees have been diligent and faithful and from the evidence in this record have rendered valuable and intelligent service in the successful conduct of a hospital that is filling a real public need.

We have carefully considered the argument of counsel, both that orally presented and in brief, and we find our minds in full accord with the decree rendered.

It will accordingly be here affirmed.

Affirmed.

BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.