34 So.2d 835

### HENDERSON et al. v. TROY BANK & TRUST CO. et al.

4 Div. 469.

Supreme Court of Alabama.

Jan. 22, 1948.

Rehearing Denied April 22, 1948.

Oliver W. Brantley, of Troy, Files Crenshaw and B. P. Crum, both of Montgomery, Alto ·V. Lee, III, of Dothan, and Chas. A. Ball, Steiner, Crum & Weil, and Ball & Ball, all of Montgomery, for appellants.

Marion Rushton, of Montgomery, J. H. Wilkerson, of Troy, and A. A. Carmichael, Atty. Gen. (pro se), for appellees.

462

STAKELY, Justice.

This case involves the validity of certain provisions of the will of Charles Henderson, who died January 7, 1937, a resident of Pike County, Alabama. The complainants, appellants here who are heirs at law of the deceased, seek by declaratory judgment to establish the specific construction that the charitable trusts created by the will violate the rule against perpetuities and the Alabama statute which places a restriction upon trusts for accumulation only. § 146, Title 47, Code of 1940.

Troy Bank & Trust Company, as trustee under the will, demurred to the bill as a whole and separately to each aspect thereof. Over the objection of complainants, the attorney general was allowed to intervene and join in the demurrer of the trustee. The attorney general took this action in order to protect, if possible, the charitable trusts under attack. There is, however, no question presented here as to the propriety of allowing the intervention of the attorney general. The court sustained the demurrer to the bill as a whole and to each aspect thereof and in doing so expressly held that there was neither violation of the rule against perpetuities nor violation of the statute against accumulation only. This appeal is from that decree.

The bill alleges that Charles Henderson died a resident of Pike County, Alabama, on January 7, 1937; that Charles Henderson had no children and both his parents predeceased him; that complainants are or represent his heirs at law and sue as such; that his will, a copy of which is attached to the bill and made a part thereof, was duly probated and the Troy Bank & Trust Company was appointed both executor and trustee; that as executor it turned over and as trustee received all the property belonging to his estate; that "at the time of his death his estate consisted of real and personal property located in the State of Alabama, valued at, towit, $3,000,000, which produced an annual net income of to-wit, $130,000."

By the first three items of his will testator directed payment of his debts and bequeathed personal effects, household articles and automobiles to his widow. He also provided that his stock in the Troy Bank & Trust Company of which he owned a controlling interest should not be sold so long as the bank continued to act as trustee under the will. Item four of the will begins with the following language.

"I hereby give, devise and bequeath all the rest and residue of my property real, personal and mixed, including all choses in action, stocks, bonds and securities, of which I may die seized and possessed or over which I may have testamentary control, or to which I may be in any way entitled, of whatsoever the same may consist, and wherever situated, to Troy Bank & Trust Company, its successors and assigns, to have and to hold absolutely and in fee simple forever, the said residue and remainder in trust, however, with the power and for the following uses and purposes, towit: * * *."

Item six closes with the following language:

"And the trust is created in perpetuity for the educational and charitable purposes set forth in the instrument."

The trustee is then given power and authority to invest, re-invest and manage the property in the trust forever and to distribute the net income earned by it as follows:

1. To seventeen named persons an aggregate of $38,600 annually in fixed amounts; $25,000 to his wife and $5,000 to his sister for life, tax free; $8,600 to fifteen other persons for twenty years if they live so long.

2. Thereafter for twenty successive years the whole net income to be devoted to building and equipping public school houses in Pike County, Alabama.

3. Thereafter, forever, the entire net income to construct and maintain a hospital for crippled children to be built at or near Troy, Alabama.

The trustee was directed to set aside in separate funds sufficient tax free securities so that the net income therefrom should be paid to the widow and testator's sister and in connection therewith it was provided that any excess income from the two funds "shall be treated as any other part of the income of said estate and shall be subject to all the terms, conditions and limitations hereinafter provided with regard to said residue."

In the event that either of the two separate funds should ever fail to produce the required income, the trustee was directed to transfer from the residue of the trust estate such additional tax free securities as might be needed to supplement the funds so as to produce the net income specified. The will then provided:

"Upon the death of my said wife or sister, the securities in the fund of the one so dying shall become a part of the residue of the trust estate, subject to all the terms, conditions and limitations as hereinafter provided."

In referring to named persons other than the widow and his sister the will provided:

"In the event of any one or more of the foregoing beneficiaries dying before the expiration of twenty years, at their death the further payment of the amount due under this instrument shall revert to the corpus of the estate and be treated the same as the original amount of the estate invested and the income would be part of the general income of the estate, the same as other investments."

As to those beneficiaries who were minors it was provided that the trustee should retain the annual payments and reinvest them until the minors should respectively arrive at the age of twenty-one years, but if either should die before reaching the age of twenty-one years, the entire accumulated fund allotted to the one so dying should "revert" to and become a part of the corpus of the trust estate.

A spendthrift clause provided that any bequest alienated shall at once cease and determine and "be forfeited to the trust estate and revert to the residuum thereof."

The will then provided that the several bequests to individuals shall be paid only out of income and profits accruing after the death of the testator and after the bequests to the wife and sister have been paid. And the will further provides:

"Should such income and profits be insufficient during any year to pay them all in full, then in that event none of them shall receive any part of the bequest made to them for that particular year, nor shall such bequests be cumulative, that is, carried to another year and be a demand against the estate.

"My purpose in paying the bequest above set forth is that my wife and sister are preferred over the others. The payments as prescribed fixes them in this status. The payments to my wife and sister are made monthly, while the others are paid annually. It appears now, however, that there will be ample and sufficient means to pay all bequests."

The will further provides:

"The trustee shall pay from and out of the income of the trust property, all expense, reasonably necessary for the administration of the trust, including interest, taxes, insurance and compensation to the trustee, as well as any other expense incurred for the benefit of the trust estate."

The trustee is required to add annually all unexpended income to the corpus of the estate. The will further provides:

"The corpus of the estate should increase, especially with the provision that

when any of the bequests mature, either from death of the beneficiary or otherwise, the amount of such beneficiary's bequest shall remain and become a part of the corpus of the estate after each year when the bequests have been paid and all expenses with taxes have been satisfied, that whatever remains from the income of that particular year shall be entered as part of the corpus of the estate and subject to the same treatment thereafter as the original corpus of the estate."

Item Five of the will contains the following language:

"At the expiration of twenty years after my death and after all bequests herein shall have been paid as herein directed, my said trustee shall cause to be formed an association to be known and styled as 'The Charles Henderson Educational Association.' This association shall have no capital stock, have its principal place of business in Troy, Pike County, Alabama, and its purpose shall be to encourage and foster education by the erection and equipment of school buildings as hereinafter set out."

Directors of the association, three in number, are to be elected by the trustee and "the State Superintendent of Education shall be ex officio a member of the Board." The will provides:

"After said association has been fully formed, the corpus of the estate, including what has been added thereto since my death, shall be held intact by the trustee, and the trustee shall pay to the association which has been so formed, from time to time as needed, the income of the estate. The county is deficient in suitable school buildings, and the whole net earnings from the estate are to be devoted to building school buildings within the County of Pike as may be needed. * * *"

The expenditures authorized and permitted by the association are for building school buildings within the County of Pike. The following provisions are set out governing these expenditures:

"All buildings * * * shall be erected in incorporated cities and towns and in duly constituted school districts, which are levying the constitutional three mill tax."

"All buildings shall be on land, the title to which shall be in the State of Alabama.

"No more than $50,000.00 shall be devoted to the construction and equipment of any one school building. The cost shall be independent of the cost of the lot. The lot upon which the building is to be erected is supposed to be donated by individuals or by the community in which the building is erected.

"No funds are to be spent in the nature of repairs or enlarging buildings.

"The location of suitable lands for such buildings shall be first provided by the towns and cities or school districts in which they are to be located and be free from all encumbrances before any such buildings are erected thereon. The amount of funds to be expended on each of such buildings shall be as said directors may deem adequate and to be paid directly to the contractor erecting or equipping the same, with proper vouchers."

It is specified that:

"The buildings erected shall be either brick, stone, or concrete.

"The buildings herein provided for shall be complete individual units and not in the nature of additions to other buildings.

"On each building there shall be the following inscription, 'Memorial to Charles Henderson.'"

The amount of funds to be expended on any particular building, within the prescribed limit, is left to the discretion of the directors of the association, and every building shall be erected according to plans and under the direction and cooperation of an architect secured and paid by the directors. The will provides:

"The funds that are to be used in any particular year must be paid from the income of the particular year. If all the income of any one year shall not be used for the buildings erected that particular year, at the end of the year it shall go into the corpus of the estate and be treated thereafter as part of the original corpus."

Item Six of the will contains the following:

"Upon the expiration of twenty years from the date in which the Charles Henderson Educational Association shall be formed, the association shall cease to erect school buildings, and another organization shall be formed, to be called the 'Charles Henderson Memorial Association,' which shall be self-perpetuating and continue indefinitely and its purpose shall be the maintenance of a hospital for the treatment of cripple children. * * *."

The bill states that, since the probate of the will, the testator's widow has died (on December 28, 1940, approximately four years after her husband's death) and that by reason of that fact and the death of Charlotte M. Williamson, another legatee, the trust has been relieved, until the period for constructing school houses begins, of all disbursements in excess of $13,000 annually; that for several years the income of the trust has greatly exceeded the outgo and the undistributed income of the trust has been added by the trustee to the corpus so that, on information and belief, it now is worth over $5,000,000 with an annual income of over $150,000.

Upon this background of stated fact the bill alleges that a controversy has arisen in which complainants "contend that the trusts directed to be formed under Items Five and Six of the will and the future interests therein sought to be created must fail as violating the rule against perpetuities and that the directions and provisions of Items Four, Five and Six thereof requiring the accumulation of income violate the statute against accumulations and the rule against perpetuities. The Troy Bank & Trust Company, as trustee, contends that the provisions of Items Four, Five and Six are in all respects valid and binding upon it as such trustee and upon all the parties hereto, and it has undertaken to carry out the provisions of said trust according to its contentions and construction thereof. There has never been any controversy between the parties with respect to the validity of the specific bequests to individuals under Item Four of the will nor as to the propriety of the disbursements heretofore made and the disbursements to be made by the trustee pursuant thereto."

Appellants confine their attack to the first or school trust. They concede that if it is valid, the second or hospital trust is also valid. In view of this concession, there is no need to set out the provisions of the will relating to the hospital trust more fully than as stated above.

■ While we are not certain that appellants insist on the point, we think it well to mention at the outset that we are dealing with the construction of a will on appeal from a decree on demurrer. However, we do not mean to depart in any way from such authorities as Fillmore v. Yarbrough, 246 Ala. 375, 20 So.2d 792. The situation here is different. In the present proceeding complainants seek to establish a specific construction of a will. It is conceded that the will is not ambiguous. Upon such specific construction the rights asserted by complainants must depend. In such a situation the allegations of the bill may be tested by demurrer. Walls v. Walls, 218 Ala. 147, 117 So. 670; City Bank & Trust Co. v. McCaa, 213 Ala. 579, 105 So. 669; Sparks v. Woolverton, 210 Ala. 669, 99 So. 102; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565. The foregoing cases were decided prior to the declaratory judgment act, but where there are no collateral facts to shed any light on the testator's intention and the bill shows, as here, that the rights of the complainants must depend on a specific construction, we see no reason why such position may not be attacked on demurrer. The effect of the ruling on the demurrer can be shown in a declaration of rights in the final decree.

■ Do the provisions of the trust violate the rule against perpetuities? "That rule is that 'no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.'" Ramage v. First Farmers & Merchants Nat. Bank, 249 Ala. 240, 30 So.2d 706, 711; § 16, Title 47, Code of 1940. In the case at bar lives obviously do not form a part of the period in which the interest must vest. Accordingly for the trust to be valid the interest must vest within twenty-one years from the death of the testator. Crawford v. Carlisle, 206 Ala. 379, 387, 89 So. 565;

Andrews v. Lincoln, 95 Me. 541, 50 A. 898, 56 L.R.A. 103; 48 C.J. p. 939. Furthermore if the trust is a charitable trust, this creates no exception to the rule that the interest must vest within the period fixed by the rule against perpetuities. Gray on Perpetuities, 4th Ed., p. 359; Restatement of the Law, Vol. IV, § 396, p. 2329; 10 Am.Jur. § 17, pp. 596, 597; In re De Long's Estate, 140 Misc. 92, 250 N.Y.S. 504; Thurlow v. Berry, 247 Ala. 631, 25 So.2d 726. It appears to be conceded by all parties that the trusts here under attack are charitable trusts. This concession is in keeping with the definition of charity as approved by this court.

" * * * 'A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.' * * *" Johnson v. Holifield, 79 Ala. 423, 425, 58 Am.Rep. 596.

■ Since a charitable trust must not violate the rule against perpetuities, it is well at this point to examine this rule in connection with such trusts. Of course when the charitable uses of a trust commence in praesenti or within the period allowed by the rule, there is no violation of the rule, even though the trust continues forever and beneficial interests under the trust may arise at a remote time. 48 C.J. p. 952, § 21. The rule is that the estate must vest within the period required by law even though payment or application to designated uses may be postponed. 48 C.J. p. 986. In other words, the rule against perpetuities is not concerned with the time when enjoyment of the estate begins, but only with its vesting. Thurlow v. Berry, supra. There appears to be a clear distinction between provisions of the will donating the property and those providing for distribution of its income. For example this court has recognized and favored vesting interest with enjoyment postponed. In Carter v. Balfour's Adm'r, 19 Ala 814, $1000 was given to charity to be enjoyed upon the death of the testator's wife. In Tarver v. Weaver, 221 Ala. 663, 130 So. 209, and in Noble v. First National Bank, 236 Ala. 499, 183 So. 393, enjoyment of the funds given to charity was postponed until the death of various persons.

■■ When a trust is created and the title immediately vests in the trustee, the rule against perpetuities is violated when it is a noncharitable trust, unless the beneficial interest vests also in the beneficiary within the period fixed by law against remoteness (perpetuities). 48 C.J. p. 983, note 27; Lyons v. Bradley, 168 Ala. 505, 53 So. 244. Vested interests are not subject to the rule against perpetuities; but all limitations are void ab initio which are not so framed as to take effect of necessity within the legal period. Lyons v. Bradley, supra.

■ But there is a difference in this respect between noncharitable trusts and those which are charitable. While as to charitable trusts the interest or estate must vest within the legal period, its immediate vesting in the trustee is sufficient to satisfy the principle of remoteness when the beneficiary is a designated body or class of the public with a shifting membership. A charitable trust contemplates perpetuity, but a perpetual trust cannot be created for individuals. The very nature of such a charity requires that its beneficiaries should be a body or class of the public. Moseley v. Smiley, 171 Ala. 593, 55 So. 143; Johnson v. Holifield, 79 Ala. 423, 58 Am.Rep. 596.

■ And so long as the estate vests in the trustee within the period of remoteness prescribed by law, it satisfies the law against perpetuities, if it is charitable and applicable to an identifiable class or body of the public, but whose personnel is not presently identifiable, and it is in the public interest. 48 C.J. pp. 986, 987, notes 61 and 62; Hopkins v. Grimshaw, 165 U.S. 342, 343, 17 S.Ct. 401, 41 L.Ed. 739.

"A private trust cannot be created so as to operate the inalienability of property beyond the period prescribed by the rule. But gifts to charitable uses being highly favored by the courts, and the public being regarded as concerned in upholding such trusts, will be sustained and carried into effect though their duration may be perpetual." Johnson v. Holifield, 79 Ala. 423, 58 Am. Rep. 596.

■ Coming now to the case at hand, while it appears to be conceded that the legal title vests immediately in the trustee, it is argued that the school trust is so limited that no beneficial interest can vest except upon the happening of certain conditions. It is claimed that these conditions may happen, if at all, at any time within the twenty year period beginning twenty years after the death of the testator. It is pointed out that when the prescribed contingency or event may not arise, if at all, until after the time allowed by law within which the gift must take effect, there is a violation of the rule against perpetuities. For example, it was said in Leonard v. Burr, 18 N.Y. 96; "The charitable gift might not take effect until some very remote period, or it might not take effect at all; though there might remain a possibility that it would arise, and thus the estate would remain inalienable for an indefinite period without the devotion of any of its income to the purpose of the charity." Crawford v. Carlisle, 206 Ala. 379, 89 So. 565.

There are certain provisions of the will which appellants insist are conditions precedent to the establishment of the school trust. They are in substance, (1) suitable lands for school buildings shall first be provided by the towns and cities or school districts in which they are located, (2) the lands shall be free from encumbrance before the buildings are erected thereon, (3) the buildings shall be erected in incorporated cities and towns and in duly constituted school districts which are levying the constitutional three mill tax.

■ It is further contended by appellants that the only way in which the gift may become a gift in praesenti is by application of the doctrine of cy pres.

While the cy pres doctrine cannot change the rule, its effect is to alter the bequest so as not to violate the rule. Charles Henderson died in 1937 before the change in § 145, Title 47, Code of 1940, took effect on May 31, 1941, so that the change in the statute cannot be considered here. Thurlow v. Berry, 247 Ala. 631, 25 So.2d 726. Prior to the change in the foregoing statute, this court often declared that cy pres did not exist in this state. Carter v. Balfour's Adm'r, 19 Ala. 814; Noble v. First National Bank, 236 Ala. 499, 183 So. 393. And yet by the doctrine of approximation or deviation a court of equity in this state may exercise jurisdiction to "vary the details of administration in order to preserve the trust and carry out the general purpose of the donor." Lovelace v. Marion Institute, 215 Ala. 271, 110 So. 381, 382; Dunn et al. v. Ellisor, 225 Ala. 15, 141 So. 700; Heustess v. Huntingdon College, 242 Ala. 272, 5 So.2d 777; Thurlow v. Berry, 249 Ala. 597, 32 So.2d 526. Where the trust is a charitable trust, an equity court looks with favor on it and will sustain it, if possible, by the doctrine of approximation. Noble v. First National Bank, 236 Ala. 499, 183 So. 393; Sparks v. Woolverton, 210 Ala. 669, 99 So. 102.

■ As we see the case the doctrine of cy pres is not involved. We think the gift is unconditional and vested immediately upon the probate of the will. Futurity is connected with the trust only as to the disbursement of income which goes first to certain named individuals, then for public schools and then to a hospital. From the time of the death of Charles Henderson the fund and the income therefrom are dedicated to charity and in the initial stage for payment out of the income of certain charges, it being expressly provided that the charges must end within lives in being or twenty years. The legal estate vested immediately in the trustee and the equitable estate in the part of the public to be benefitted, subject to certain allowances payable only from accrued income.

■ The provisions of the will to which we have alluded are not conditions precedent to the vesting of the fund for school building purposes, but are rules or regulations under which the communities

are to be selected to receive the aid of the fund already vested. The recipient of the school gift is not the Charles Henderson Educational Association, but is designated by the thought contained in these words, "The county is deficient in suitable school buildings and the whole net earnings from the estate are to be devoted to building school buildings within the County of Pike as may be needed." Thus is described that part of the public to be benefited. Johns v. Birmingham Trust & Savings Co., 205 Ala. 535, 88 So. 835; Tarver v. Weaver, 221 Ala. 663, 130 So. 209; Williams v. Pearson, 38 Ala. 299; Harges v. Zander et al., 314 Ill. 170, 145 N.E. 363; Webb v. Webb, 340 Ill. 407, 172 N.E. 730, 71 A.L.R. 404; Russell v. Allen, 107 U.S. 163, 2 S.Ct. 327, 27 L.Ed. 397.

The doctrine of cy pres is not recognized in the State of Virginia. Zollman on American Law of Charities, § 126, p. 79. In the case of Thomas v. Bryant, 185 Va. 845, 40 S.E.2d 487, 169 A.L.R. 257, the Virginia Supreme Court of Appeals in discussing the will of George W. Simmerman, a resident of Virginia who died in 1939, in part said:

"After a number of specific gifts for the benefit of his widow and others, he made the following provision, the validity of which is involved in the present controversy:

" 'Sixth: I direct my surviving Executor, after the death or remarriage of my wife, and the payment of the legacies hereinbefore mentioned, to apply and use all of the remainder of my estate in the building and maintenance of a home for destitute and dependent aged white people, both men and women, living in Wythe County, Virginia, the said home is to be located in the Town of Wytheville, Virginia, and is to be named "The George W. Simmerman Home for the Aged." The legal title to all of the property used in the erection of this home and the maintenance of the same, and the legal title to the home after it is erected, and the fund invested for its maintenance, is to be vested in five (5) Trustees, and which five Trustees are to be elected and appointed in the following manner: * * *.'

"Then followed a provision by which each of the congregations of five churches in Wytheville was to select a trustee, who in turn was to be appointed trustee by the Circuit Court of Wythe county. Succeeding trustees were to be selected in a similar manner. It was further provided that these trustees so selected and appointed 'shall hold the legal title to all of the real estate and personal property constituting this home for the aged and also the legal title to the fund to be held by said trustees for the operation and maintenance of this home and support of the inmates therein.' "

The court continued:

"In the case before us the testator desired that this fund be used for a worthy charitable purpose. It is clear that he did not intend that his heirs should receive it. * * *

"The appellees argue that this reasoning is but an application of the cy pres doctrine which, they say, has not been adopted in Virginia, but was rejected in Massanetta Springs, etc., Encampment v. Keezell, 161 Va. 532, 542, 171 S.E. 511, and in some earlier cases as exemplefied in Gallego's Ex'rs v. Attorney General, 3 Leigh 450, 30 Va. 450, 24 Am.Dec. 650.

"Whether the cy pres doctrine in its broader aspects will be applied in a proper case we need not here decide.

"In the present case we hold, without resorting to the cy pres doctrine, that the use of the residence of the testator and the fund set aside for the maintenance of the Simmerman Home, so far as possible, are within the express plan of the testator and should be carried out to the extent of the fund provided. In re Price's Will, supra [264 App.Div. 29, 35 N.Y.S.2d 111]. * * *

"Finally, the heirs insist that even if the bequest be valid under our statutes and be possible of performance, nevertheless it is invalid because it violates the rule against perpetuities.

"The argument is that under the language of the testator the residuum of the estate, after the death of the widow, was 'to be vested' in five trustees, to be selected by the congregations of the respective churches located in Wytheville, and ap-

proved by the circuit court of the county; that since the election and approval of these trustees need not necessarily be effected within the required period of twenty-one years and ten months after the expiration of the widow's life estate, the attempted trust is void under the familiar principles stated in Skeen v. Clinchfield Coal Corp., 137 Va. 397, 403, 119 S.E. 89.

"We cannot agree with this contention. It is well settled that the rule against perpetuities has reference to the time within which the interest vests and is not con-·cerned with the postponement of the enjoyment of such interest. 41 Am.Jur., Perpetuities, § 23, p. 67; Collins v. Lyon, Inc., 181 Va. 230, 249, 24 S.E.2d 572, 581.
\* \* \*

"Tested by these principles we think it was the clear intent of the testator that the ·class of individuals whom he intended to ·benefit should take a vested interest in the residuum of his estate immediately upon his death, and that merely the enjoyment thereof was postponed beyond the life ·estate of the widow. The language used is: 'I direct my surviving Executor, after the death or remarriage of my wife, and the payment of the legacies hereinbefore mentioned, to apply and use all of the remain-·der of my estate in the building and maintenance of a home for destitute and dependent aged white people, both men and women, living in Wythe County, Virginia.'

"It is true that the testator provided that, 'The legal title to all of the property used in the erection of this home and the maintenance of the same, and the legal title to the home after it is erected, and the fund invested for its maintenance, *is to be vested in* five trustees' (italics supplied), to be selected in a stated manner. But it is clear that this provision was intended not ·to postpone the vesting of the estate, but indicated merely the manner in which the legal title to the property was to be held.
\* \* \* "

We judicially know that at the ·time of the death of Charles Henderson in 1937 Pike County was levying the three mill tax to continue until 1947 and further ·that Pike County has now levied the tax for fifteen years more until September 31, 1962. School building under the will is to be done from 1957 to 1977. It may be asked what the situation would be ·if the constitutional amendment is repealed by the people or the people of Pike County by failing to vote the tax county-wide make this qualification impossible of performance or what the situation would be if no community donates the land for the school free of encumbrance. The answer is that the trust property has been donated to charity and under the doctrine of approximation or deviation the equity court has the power to determine whether the qualifications are still applicable if the foregoing situations should arise. Authorities supra. No more specific answer need be given until a concrete situation arises.

We conclude that the court correctly determined that the provisions of the will ·do not violate the rule against perpetuities.

Do the provisions of the trust violate the restrictions contained in § 146, Title 47, Code of 1940? To solve the problem we should determine the ·meaning of the statute and then apply it to the facts as alleged in the bill. Section 146, Title 47, Code of 1940, is as follows:

"No trust of estate for the purpose of accumulation only can have any force or effect for a longer term than ten years, unless when for the benefit of a minor in being at the date of conveyance, or if by will, at the death of the testator; in which case the trust may extend to the termination of such minority."

This court has never undertaken to say exactly what is the meaning of the word "only" in the body of the statute. This statute first appeared in this ·state in the Code of 1852. The Code of 1852 was prepared by John J. Ormond, Arthur. P. Bagley and George Goldthwaite, as Code Commissioners, pursuant to an act of the legislature. The head notes and index were prepared by Henry C. Semple. Section 146, Title 47, Code of 1940, has come down without change from § 1310 of the Code of 1852. It was placed in the Code of 1852 by the aforesaid commissioners and the annotator Henry C. Semple, evidently struck by the word "only" in the statute, abstracted the section in this way, "Trusts for accumulation merely, not to ex-

tend for more than ten years, except for minors."

Section 1309 of the Code of 1852 formed our first statute against perpetuities. This ultimately became § 6922 of the Code of 1923 and was repealed in 1931. Acts of 1931, p. 816. These two sections remained in the same order or sequence until the Code of 1907, when the commissioners made a change in the article containing these two sections and they became respectively 3417 under Perpetuities and 3410 under Trust Estate and Uses. The sections appear in the Code of 1923 as §§ 6922 and 6914, respectively. It has been suggested that the word "only" in § 1310 of the Code of 1852, was in order to distinguish the section on accumulations from the preceding section on perpetuities and that the original purpose of this word ended when the original sequence in the two statutes ended. However this may be, the facts remain that the word "only" was left in the statute when the Code of 1907 was adopted, still remains in the statute, and was in the statute when Charles Henderson died in 1937.

It is also suggested that the first American statute on the subject was by the State of New York, 1 Rev.St. (1st Ed.) pt. 2, c. 1, Tit. 2, Art. 2, § 45 et seq. which placed greater restrictions on accumulations although it borrowed from the English statute. Restatement, Prop. Vol. IV, p. 2594. The New York Act made no attempt to change the definition of an accumulation or to restrict the character of accumulations. It had reference to the period allowable for accumulations for the benefit of certain persons. Substantially the entire chapter of the Code of 1852 entitled "Real and Personal Property; Its Acquisition, Enjoyment, Disposition, and other Private Rights" was new to that Code. The code commissioners had the New York statutes before them when they wrote the chapter into the code as has been pointed out by this court in You v. Flinn, 1859, 34 Ala. 409; Kidd et al. v. Cruse, 200 Ala. 293, 76 So. 59; Berry et al. v. Bromberg, Ex'r., 142 Ala. 339, 37 So. 847. It is suggested that this historical background shows a disposition to follow the New York statutes in placing greater restrictions on the period of perpetuities and accumulations than allowed under the common law and accordingly the word "only" amounts to surplusage.

The appellees, however, insist that the word "only" should be given its normal significance. They point out that it is reasonable to assume that the codifiers of the Code of 1852 had access to Kent's Commentaries, first published in 1828. Kent was the American counterpart of Blackstone. Concerning the Thellusson will—this caused the Thellusson Act, the first statutory restriction upon trusts for accumulations, Ramage v. First Farmers & Merchants Nat. Bank, Ala.Sup., 30 So.2d 706—Chancellor Kent wrote in a footnote in 4 Kent 284, 13th Ed., p. 307:

"The testator died in 1797. He left three sons and three daughters, and half a million sterling, on an accumulating fund. If the limitation should extend to upwards of one hundred years, as it may, the property will have amounted to upwards of one hundred millions sterling!"

In the text Chancellor Kent said:

"This is the most extraordinary instance upon record of calculating and unfeeling pride and vanity in a testator, disregarding the ease and comfort of his immediate descendants, for the miserable satisfaction of enjoying in anticipation the wealth and aggrandizement of a distant posterity. Such an ironhearted scheme of settlement, by withdrawing property for so long a period from *all* the uses and purposes of social life, was intollerable. It gave occasion to the statute of 39 and 40 Geo. III. c. 98, prohibiting thereafter any person, by deed or will, from settling or devising real or personal property, for the purpose of accumulation, by means of rents or profits, for a longer period than the life of the settler, or twenty-one years after his death, or during the minority of any person or persons living at his decease, who, under the deed or will directing the accumulation, would, if then of full age, be entitled to the rents and profits." [Italics ours.]

The word "only" does not appear in the statutes of any other of the thirteen states which have enacted various modifications.

of the Thellusson Act nor in that act itself. Gertman v. Burdick, 75 App.D.C. 48, 123 F.2d 924, 152 A.L.R. pp. 651-654. The statute under consideration is directly contrary to the Thellusson Act which regulates dispositions of property "in such manner that the rents, issues, profits or produce thereof shall be wholly or partially accumulated," for the Alabama statute restricts only those trusts which are "for the purpose of accumulation only." If the Code Commissioners of 1852 had considered it best to forbid partial accumulation they had the model before them. But they regulated "accumulation only." The Legislature of 1852 ratified their work and every other legislature which has adopted a code since, has readopted it.

It is not unreasonable to think that the codifiers of 1852 in the light of the statements of Chancellor Kent may have considered that Alabama did not need any restriction on accumulation other than that imposed by the common law against perpetuities (Ramage v. First Farmers & Merchants Nat. Bank, supra; Crawford v. Carlisle, supra; Gertman v. Burdick, 75 App.D.C. 48, 123 F.2d 924, 152 A.L.R. p. 651), and decided to have no other except in cases where, as Thellusson had shown, the intention of the testator was accumulation only. It seems evident that in thirty-five of the forty-eight states, there is no restriction unless it be that of the common law.

 So while we cannot be entirely certain, we think that under all the circumstances we should give the word "only" its normal significance because in statutory interpretation words will ordinarily be given their normal significance. Ex parte Pepper, 185 Ala. 284, 64 So. 112; 59 C.J. p. 974. If this results in a statute which may not be conducive to the economic and social progress of the state, this is a matter for the legislature and not for the courts. We add that we are not dealing with a case where there is anything to show evasion or subterfuge in the provisions of the trust. Such a case can be dealt with when and if it arises.

 Before applying the statute to the facts, there is one other aspect of the statute which we think should be clarified. Ordinarily where in order to ascertain the purpose of the testator, it is necessary to look to facts outside of the will, such facts will be considered as of the time when the will was made. Thomas v. Reynolds, 234 Ala. 212, 174 So. 753; Fillmore v. Yarbrough, 246 Ala. 375, 20 So.2d 792. But in the foregoing situation there is no statute to consider as there is in the present situation. And in the foregoing situation the surrounding facts and circumstances will be considered in order to resolve ambiguity in the will.. Here there is no ambiguity to be resolved.

 The statute provides that "no trust of estate * * * can have any force or effect," etc. It is our view that it was not intended by the statute to require examination of the actual intent of the testator when he made the will but rather the purpose of the statute is to defeat an intention that culminates or results in accumulation only. Obviously such culmination or result cannot be ascertained until the will goes into effect and its provisions become affected by conditions then prevailing. " * * * whether the accumulations are within the act must be determined as of the time the will takes effect." In re Billings' Estate, 268 Pa. 67, 110 A. 768, 769; 48 C.J. § 82, p. 992. The statute itself shows that when the trust of estate by will is for the benefit of a minor the status at the time of the testator's death is the controlling inquiry.

We come now to the facts as alleged in the bill. At the time of his death in 1937 Charles Henderson had an estate worth $3,000,000, which produced an annual net income of $130,000. He had no children or grandchildren. No one was dependent on him for support except his wife and perhaps his sister. His first concern was to provide for his wife and sister for whom he provided an aggregate income of $30,000. It seems to us that the will·shows real concern that they should receive this amount tax free and further that his estate might not produce this amount. He instructed his trustee to set up separate accounts for them, not separate trusts, but an arrangement of "preferring them over the

472

others" and also of preserving the tax free idea. He made the allowances to his collaterals, aggregating $8600, secondary to those of his wife and sister. Provision was made that when in any one year the income and profits were insufficient to pay them all in full, then none of his collaterals should receive anything in that year, nor should their bequests be cumulative. As a precaution to that end payments to his wife and sister were to be made monthly, those to his collaterals on a yearly basis. The testator also provided for the expense of administration, upkeep and maintenance.

In preparing his will Charles Henderson had the right to calculate what his estate could conservatively be expected to produce, keeping always in mind expenses, taxes and losses whatever they might be, through wars and depressions, inflation and deflation over a period of twenty years or until the needs of his family as he saw them, would end. He was obviously a shrewd and conservative business man and having lived through depression, panic and war knew the uncertainties of business and that fortunes can disappear and income vary. These things he had a right to consider. Henderson v. Henderson, 210 Ala. 73, 97 So. 353. To all of this may be added his provisions for disbursements for charity. In the light of all the circumstances including the substantial disbursements which he directed to be paid to the objects of his bounty, we do not think it can be said that he intended to provide for accumulation only.

We have not overlooked the contention of appellees that the heirs at law have no right to insist on violation of the statute against accumulation, because, since the equitable estate is not contingent, the heirs cannot take. As to this contention, we find it unnecessary to comment.

We conclude that the court was correct in holding that the provisions of the trust violated neither the rule against perpetuities nor the statute against accumulation only.

Affirmed.

All the Justices concur.