## STOVALL, by next friend, vs. JOHNSON.

1. A father is bound to support and protect his children during minority, and is consequently entitled to their services and the products of their labor, so long as they remain members of his family.
2. The agreement of a father, in consideration of natural love and affection merely, to permit a minor son, who continues under the paternal

roof as a member of the family, to cultivate a crop and receive its proceeds, is revocable by him at any time, before the crop is gathered and disposed of by the son.

Error to the Circuit Court of Morgan. Tried before the the Hon. Thos. A. Walker.

THIS was an action of assumpsit by the plaintiff against the defendant in error to recover the value of a crop of corn and cotton, sold and delivered, &c. The facts of the case are sufficiently set out in the opinion of the court. The court charged the jury, that if they believed from the evidence that the plaintiff was a minor and resided with his father under the same roof and shared his bounty and protection, as a member of the family, during the time he was cultivating the crop, and that the father, when the crop was made, sold and delivered it to the defendant, the plaintiff was not entitled to recover, and refused to charge them, at the request of the plaintiff, that if they believed from the evidence, that the father was insolvent, and of intemperate habits, that he failed to provide for the support of the plaintiff and for the payment of such debts as he had properly and honestly contracted, and that he permitted the plaintiff, though a minor and a member of his family, to labor for himself and enjoy the profits thereof, under such a state of facts, the father could not deprive the plaintiff of the fruits of his labor without his consent.

To the charge given and the refusal to charge as requested the plaintiff excepted and now assigns them as error.

PETERS, for the plaintiff in error:

1. There can be no doubt that a minor may enter into legal and binding contracts for his own benefit, and especially can this be done with the father's consent; and the contracts of a minor can only be avoided by himself, and not by the party with whom he contracts. There is no legal inhibition restraining the minor from contracting with the father himself.—5 Bouv. Bac. Abr. 109, f.; 5 ib. 117, i.; 5 ib. 134; i. 4, and cases there cited; Zouch v. Parsons, 3 Burr. 1811; 3 Burr. 1719; 1 Atk. 489; Wm. Jones' R. 157; ib. 182; Bayles v. Dinsley, 3 M. & S. 480; Co. Litt. 172, a; 1 Lev. 86; 2 Bulst. 69; Dalton v. Gibbs, 5 Bingh. 198; 5 ib. 234; Turner v. Trisby, 1 Stra. 168; 1 Sid.

446; Chapple v. Cooper, 13 M. & W. 259; Turberville v. White-house, 1 C. & P. 94; Ellis v. Ellis, 12 Mod. R. 197; S. C. 1 Ld. Raym. 334; Harris v. Lee, 1 P. Wms. 482; Clark v. Leslie, 5 Esp. 28; Hedgeley v. Holt, 4 C. & P. 104; Bac. Mx. R. 18; 2 Keb. 623; Holt v. Ward, 2 Stra. 937; 1 Barnw. R. 290; 6 Taunt. R. 118; Addison's Contr. 858, *et seq.;* Hanrick v. Bruce, 2 M. & S. 205; Tucker et al. v. Moreland, 10 Pet. R. 59; Vasse v. Smith, 6 Cra. R. 226; S. Cas. 1 Amer. L. Cas. 86-98, and notes; 103, *et seq.;* also cases *infra.*

2. If then the father may contract with his minor son, he may *sell* his son his time; or he may give it to him, or which is the same thing, he may "emancipate" him and permit him to labor for himself: and such a contract is binding on the father and he cannot defeat it against the son's consent. The fact that the son, *after* his emancipation, still continued to remain in the family of the father, does not make void the contract of emancipation; unless, perhaps, the *remaining* was against the will of the father. At best, it is but a circumstance to show that the emancipation had not in reality been granted or accepted. But this circumstance being rebutted by proof of an *express* and *existing* emancipation, the implication of its non-existence fails. In Nightingale v. Witherington, and Jenney v. Alden, the Supreme Court of Massachusetts, upon whose authority this court relies, in deciding Godfrey v. Hays, expressly affirms this principle. In neither of the cases referred to, had the son *totally* abandoned the family or cut off his connection with the father, otherwise than by an express permission to labor for himself in the one case, and an implied permission in the other. Yet in both these cases the minor's rights were protected. It is the *contract of emancipation,* and not the *place of domicil,* that releases and frees the son from parental servitude.—Nightingale v. Witherington, 15 Mass. R. 272; Jenney v. Alden, 12 ib. 375; Whiting v. Earle, 3 Pick. 201; Godfrey v. Hays, 6 Ala. R. 501; 9 Ala. 933; 10 Ala. 348; Lyon *et al.* v. Bowling, 14 Ala. 753-763, *and cases there cited;* Shute v. Dorr, 5 Wend. R. 204.

L. P. WALKER, for defendant:

1. The obligation of the father for the maintenance of the son continues so long as the latter remains under the parental roof; and as a consequence of this obligation the father is so long as the son remains a member of the family entitled to his

Stovall v. Johnson.

*earnings*, which are therefore subject to the payment of the father's debts. It is only when the father *refuses* to support his child *and drives him from* the *parental roof*, or when he permits the child to labor for his own benefit, *and the latter ceases to be a member of his family*, thus becoming *emancipated*, that the earnings of the child are his own property free from the debts of the parent. The decisions of this court are *express* to the point and cover this case completely.—6 Ala. 501-503; 14 Ala. 753-763; 15 Mass. 272.

2. It is not the law, as urged by the counsel for the plaintiff in error, that the fact of the *son's remaining in the family of the father*, is mere presumptive evidence (subject to rebuttal by proof) that the gift of emancipation had never been perfected by an *acceptance* on the part of the son. The correct principle is, that *leaving* the *family roof* is an essential ingredient in *emancipation;* and this, for the reason that the emancipation can never be complete while the father's obligation of maintenance *continues*, and this obligation does continue until the son *ceases* to be a *member of the family*. Vide authorities, *supra*. It does not appear (as stated by counsel for plaintiff in error) that in *Nightingale* v. *Witherington* "the son had *not* abandoned the father's family." Vide the case.—15 Mass. 272.

3. Even if it were the law that a son could be *emancipated*, and still live with the family, yet in such case the refusal or the inability of the father to support the son, would be necessary to constitute *emancipation*. Now emancipation is never presumed, but all the ingredients necessary to constitute it must be strictly proved.—Sumner v. Lebec, 3 Greenl. 223. There is in this case no proof of any such inability or refusal on the part of the father to support his son. The confession of the father that he is unable to pay the son's debts, is nothing to the point, unless it were shown in addition that these debts were for *necessaries not otherwise furnished by the father*. The presumption is that so long as the son lives with the father he is maintained and supported by him. At any rate, the *obligation* of the father to maintain him continues, and consequently its *co-relative*, the liability of the son's earnings for the father's debts, also continues.

PARSONS, J.—It appears that Thomas Stovall, the plaintiff's father, being insolvent, was in possession of some land,

which his brother permitted him to cultivate, and that Thomas permitted the plaintiff, his son, to cultivate a portion of it during the year 1847, for his own benefit, to enable him to pay his debts; the plaintiff being under the age of twenty-one years and a member of his father's family. It appears by the testimony of Thomas, that after the plaintiff had made the crop on his own account and by permission of Thomas, it was sold by Peter Stovall, the owner of the land and by whose permission Thomas held it, to the defendant, who gathered it and carried it away, and this action is brought to recover the value of it from the defendant. The witness, Thomas Stovall, further stated that he had given the plaintiff his liberty and permitted him to labor for his own benefit; that this permission was given the year before he commenced the crop, and he also stated that his son was about twenty years of age during the year in which the crop was made, and that he, the witness, had no control over the crop and never claimed or sold it. But it appeared by other proof in the cause, that Thomas Stovall himself sold the crop to the defendant, and that the plaintiff, during the whole time he was laboring in the crop and making it, and at the time it was sold by his father to the defendant, resided in his father's family, on the same premises, and that the plaintiff's sisters, who, as I infer, were also members of the family, were seen, once or twice, in the field, assisting in the crop.

The question is, whether the sale by Thomas was valid, notwithstanding the plaintiff's claim to the crop. In Godfrey v. Hays, 6 Ala. R. 501, it was held by this court, that a father being obliged to support his children, is entitled to their services during minority, and to the product of their labor, so long as they remain members of his family, but if he drive them away or voluntarily permit them to leave him, and provide for themselves, he is not entitled to their earnings: That, therefore, where a father made a contract with his son, then living with him, that he would give him a slave for doing certain work upon a mill, which was done and the slave conveyed to the son, the slave could be taken in execution at the suit of the father's creditors. A father is bound to support his minor children and is entitled to their services. He may make a gift to them, and the gift, if perfected by an actual delivery, is valid, and the father cannot revoke it. But if the gift is executory, the father may

Stovall v. Johnson.

revoke it at pleasure. A father is under no positive obligation to advance or even to educate his children. These are duties of imperfect obligation. But such obligations are no consideration to support a father's promise to his child to perform them. Natural love and affection may be a good consideration to raise a use, upon a conveyance by bargain and sale, and they are a good consideration to support a deed generally. But they are not a sufficient consideration to support a promise or executory contract.—Fink v. Cox, executor, &c., 18 Johns. R. 145. In the present case, the father had not cast off his son upon the world: He remained under the parental roof as one of the family: The father was still bound for his support and entitled to his services: He had given him the privilege to make a crop for his own benefit on land which for the time belonged to the father: And the father, according to some of the evidence in the cause, sold and delivered the crop to the defendant, before it was gathered. This was an effectual revocation of the authority which the father had given the son to make the crop for his own benefit, before the son had received the fruits of his labor. It appears to me that if a father, without any consideration, or merely on the consideration of natural love and affection, *emancipate* his son in this way, still retaining him in his house as one of his family, the emancipation is a nullity, or may be revoked at pleasure. It would be hard upon the father, if it were not so, since he is legally responsible for his support, and morally responsible for the parental control due to a son. The father's promise to give the son his time, or his gift to the son of a portion of the time of his minority, is executory in its very nature until the time has fully elapsed, and in the meantime the father may revoke it at pleasure; certainly so, if the son remain in the father's family. The father, therefore, can prevent the son, under such circumstances, from completing any undertaking, in which others are not concerned. As the father, in such cases, may effectually deprive the son of the fruits of his labor, it would seem to follow that he may take them himself, under his general right to his son's services. It is unnecessary to enquire how far this is true in a case in which the son may advance, or agree to advance, a valuable consideration. It does not appear that the plaintiff bestowed any thing but his services, and they belonged to his father; nor is it necessary to enquire what might have

been the plaintiff's right to the crop, if he had been permitted to gather it, for his father, as some of the evidence shows, sold and delivered it to the defendant before it was gathered, and we think this sale was good against the plaintiff. We cannot discover that the Circuit Judge charged any thing inconsistent with the principles of this opinion, nor did he refuse any charge which he ought to have given. Let the judgment be affirmed.