200 So. 759
### PATTERSON v LEONARD.
#### 4 Div. 144.

Supreme Court of Alabama.

Feb. 20, 1941.

Rehearing Denied March 6, 1941.

Rushton & Rushton, of Montgomery, and Walter W. Patterson, pro se, for appellant.

Denson & Denson and L. J. Tyner, all of Opelika, for appellee.

BROWN, Justice.

The bill, filed by appellant against his sister, seeks to declare "void and of no effect" a deed of gift executed by the complainant to his brother, Ernest D. Patterson, now deceased, reciting:

"That grantor, for and in consideration of love and affection of his brother, grantee, has given, granted, enfeoffed and conveyed, and by these presents give, grant, enfeoff and convey unto grantee, and grantee's heirs and assigns, all of grantor's right, title and interest in and to all those tracts and parcels of land situate, lying and being in Russell County, Alabama, which belonged to Albert E. Patterson, Sr., (the father of grantor and grantee) at the time of death of said Albert E. Patterson, Sr., said right, title and interest hereby given, granted and conveyed being a 143/840th interest in and to said lands,—said interest hereby conveyed having been acquired by grantor respectively, as devisee under the will of said Albert E. Patterson, Sr., deceased, late of Russell County, Alabama; by inheritance from grantor's brother, Oscar D. Patterson, now deceased; and by inheritance from grantor's sister, Leola E. Patterson, who died intestate leaving a husband, A. G. Hubbell, but no children nor descendants of deceased children.

"Said grantor further by these presents, and for the consideration aforesaid, hereby gives, grants and conveys to grantee, his heirs and assigns, any and all cattle, livestock, farming implements, farming machinery, and all other personal property now located on said lands in Russell County, Alabama, to the extent of any interest and title that grantor has to the same."

Following the special prayer for the cancellation of the deed is a prayer for general relief. The grounds upon which the complainant seeks relief are fraud and undue influence brought to bear upon complainant through an alleged conspiracy between the respondent and said deceased brother, Ern-

est D. Patterson, to deprive complainant of his interest in his father's estate.

The answer denied the alleged fraud and undue influence.

The Circuit Court, upon final submission on pleadings and proof, denied the complainant relief and dismissed the bill. Hence this appeal.

The background of this litigation, to state it briefly, is, the father of the complainant, A. E. Patterson, Sr., deceased, died in the year 1910, leaving an estate consisting of about 3,000 acres of farm lands, some in cultivation, and some timbered, which he devised by his last will to his seven sons and daughters, naming Ernest D., Albert E., Jr., and Oscar P., as the executors of his will, exempting them from giving bond, making an inventory or accounting to any court, and making provision for the settlement of any differences of opinion in carrying out the provision of the will. This provision, however, was omitted from the record. No devise was made to the widow for the reason, as stated in the will, that she was possessed of a separate estate, and was without need of assistance from the testator. The will was duly probated and admitted to record in the Probate Court of Russell County.

Two of the sons named as executors died about the year 1923, and Ernest D. Patterson continued to handle the estate, and operated the farm for several years, and paid the debts and distributed to each of the several legatees, other than Mildred, incomes and profits arising therefrom amounting to approximately $7,000. Ernest kept on the books of the estate an account of Mildred's share, which was distributed to the others —for the reason, as some of the evidence shows—she in 1906, withdrew a sum of money from a savings account in a bank in Columbus, Georgia, deposited to her credit, by the mother, and left home, and her whereabouts were not known to any one except the mother, who had a letter from her in 1921, but did not make this fact known to the brothers and sisters. Ernest continued the farming operation as his father had done, through renting to tenants to whom he made advances up until about the year 1934, and up to 1924 at profit. From the year 1924 on he did not account to the complainant for his share of profits.

During the year 1934, Mildred, through lawyers employed in Texas, began to inquire into the status of the estate and demanded an accounting. These inquiries and demands for an accounting by Mildred caused considerable concern and worry on the part of Ernest, and he through his sister, the respondent, communicated with complainant, who was a lawyer, graduate of a university, and holding a master's degree from Yale, asking his advice. He suggested that the mother claim that the money that went into the purchase of the lands was her money and for her to assert her claim thereto, and others suggested that Ernest set up an account on the books charging a large salary for his services in operating the plantations, or probably this was his own idea.

Finally in 1934 the complainant demanded that he be allowed to inspect the books and, according to his version, found that the accounts had been padded, and trouble began to brew.

In the meantime the mother's estate seemed to have increased, and she was considerably worried about income taxes and other taxes and called on complainant for advice, probably how to evade some of the taxes and also to prevent Mildred from sharing in her estate. Walter drew up a trust instrument conveying all of the property to the respondent, Elizabeth, with income payable to the mother, at her death the property to be divided between Elizabeth, Ernest and Walter. The mother, who appears to have been a strong-minded, miserly woman, on learning of the legal effect of the trust instrument, demanded that all of the beneficiaries consent to its revocation, and she seems to have been very much incensed against Walter, whom she thought had deceived her. The trust agreement was revoked and she made a will disinheriting Walter.

As the result of the discovery by Walter of what he regarded a padding of the books of accounts claiming a large sum due to Ernest for managing the estate, considerable bitterness grew up between Walter and Ernest, and Ernest asserted that Walter had threatened him, not only with litigation, but personal violence, and had accused him of dishonesty, of which fact the mother had taken notice, and demanded that Walter cease annoying Ernest and treat him as a brother.

Elizabeth, the respondent, was the go-between, apparently with full faith in Ernest's honesty, and yet with much affection for Walter, and sympathy and tolerance for the mother, and made many trips from her home in Nashville, Tennessee, to Co-

!umbus, Georgia, to comfort and reconcile the mother as between the two contending brothers.

Ernest was traveling salesman with ordinary education, and had grown old in the management of his own business and that of the estate, became ill and suffered from heart trouble. Walter was highly educated, a lawyer of experience and ability, and in the prime of life.

The administration of the estate had been removed from the Probate Court to the Circuit Court, in Equity, and after considerable quibbling, Walter to avoid liability for Mildred's interest, and possible liability to Ernest for services, of his own volition, executed the deed of gift, and a written waiver of accounting, by Ernest as executor, and final settlement of the estate was made and passed by the court in the year 1935. The deed of gift was prepared and executed without the suggestion of any one, and was delivered by complainant in person to Ernest who accepted the same, according to Walter, "with tears in his eyes," and thanked him for his generosity. Walter then forwarded a separate instrument to his wife in Chicago through which she released her dower interest in the property.

The mother destroyed her first will and made another bequeathing her estate to Ernest, Elizabeth and Walter. Ernest died in 1936, leaving a will bequeathing his property to the respondent. The mother then executed another trust instrument giving, at Walter's request, five-ninths of her estate to Elizabeth, and four-ninths to him. From the property he realized and received from $18,000 to $20,000, which was more than his interest in the father's estate. The mother died in 1937.

After the execution of the deed of gift and settlement of the estate the complainant expressed to his son by a first marriage, who had been adopted by Elizabeth as her son and given her married name, full satisfaction with the settlement and his faith in Elizabeth and her husband, avowing that they had treated him justly.

■ "It is a general rule that a completed gift inter vivos is irrevocable by the donor, his heirs, and personal representative." 24 Am.Juris. 758, § 53; Stovall v. Johnson, 17 Ala. 14, 18; 12 R.C.L. 952, § 27; Sanborn v. Goodhue, 28 N.H. 48, 59 Am.Dec. 398.

■ When such gift is questioned its revocability usually turns on whether or not it was a perfect gift; that is, intentionally made by the donor of his own will— or was superinduced by force, fraud or undue influence, which operated to destroy the donor's free agency. 12 R.C.L. 953, § 28; Adair et al. v. Craig et al. 135 Ala. 332, 33 So. 902; Harris et al. v. Bowles et al., 208 Ala. 545, 94 So. 757; Noel et al. v. Noel, 229 Ala. 20, 155 So. 362.

■ After careful consideration of the case as presented on the record before us, we are not able to affirm that the free agency of the complainant was interfered with by any act or conduct of the respondent, Ernest D. Patterson, or any one else, or that there was any connivance or conspiracy between Elizabeth and Ernest to deprive the complainant of his rights. In the situation confronting Ernest at the time the gift was made, he was vulnerable to litigation which was threatened from two sources, Walter and Mildred. Walter "held the whip handle," and was in fact the dominant party in respect to the situation. His motive was to avoid responsibility and at the same time regain his mother's confidence in the hope of participating as a devisee or distributee in her estate.

■ Neither the averments of the bill nor the evidence warrant a reopening of the estate for an accounting. To that end the complaining party must allege and prove error to his hurt occurring without fault or negligence on his part. Alexander v. Alexander, 70 Ala. 357.

The decree of the Circuit Court dismissing the bill is free from error.

Affirmed.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.