334 So.2d 848 (1976)
William J. BAXLEY, etc.
v.
BIRMINGHAM TRUST NATIONAL BANK et al. (two cases).
SC 1217, SC 1218.
Supreme Court of Alabama.
July 9, 1976.
*849 William J. Baxley, Atty. Gen., and James S. Ward, Asst. Atty. Gen., for appellants.
Drayton T. Scott and Kirby Sevier, Birmingham, for The American Bible Society.
Gilbert E. Johnston, Sydney Lavender and John D. Quenelle, Birmingham, for Alfred Swedlaw, Administrator ad litem of the Estate of W. L. Allan, deceased.
BLOODWORTH, Justice.
The Attorney General of Alabama, The Honorable William J. Baxley, as the representative of the unknown beneficiaries of a public trust, appeals from a judgment that the allegedly public trust here in question was never effectively created and that, therefore, a bequest left to that trust under the will of Mrs. Elmorene B. Allan must fail.
Mrs. Allan's husband predeceased her by a little more than a year. Under the terms of his will, Mrs. Allan received a life estate in a marital trust with a general testamentary power of appointment over the remainder of the marital trust. The basic issue before the trial court in this case was whether or not Mrs. Allan effectively exercised her power of appointment thereby permitting the remainder of the marital trust property to pass under her will rather than under her husband's. In the event that Mrs. Allan failed to exercise her power effectively, Mr. Allan's will provides that the property subject to his wife's power passes to a family trust set up under his will. (The trust principal remaining at the death of the family beneficiaries is to be distributed to various charities, including the American Bible Society, one of the parties to this appeal.)
Mrs. Allan, in a will dated October 26, 1970, attempted to exercise her power of appointment by means of the following provisions:
"I hereby exercise the power of appointment to direct the disposition of certain property given me under the provisions of the Will of my beloved husband, W. L. Allan, by his Will dated *850 March 20, 1969, and in the specific exercise of said power I give, devise and bequeath the entire estate over which I have said power of appointment to The First National City Bank of New York, New York (and to such successor corporation having trust powers as shall succeed to the business of said Bank by purchase, merger, consolidation or change of charter or name) in trust, nevertheless, for the uses and purposes and upon the terms and conditions and with the powers and duties hereinafter stated:
"I direct that my trustee pay the income from the trust estate in quarterly installments to The Allan-Bryant Educational Foundation, Inc. who shall use said money in accordance with the provisions of the instruments by which said corporation was created. In the event my death occurs prior to the actual formation of said corporation, I direct that my executor do whatsoever is necessary to accomplish the creation of the corporation in accordance with the written terms and conditions which I have given to the law firm of Sadler, Sadler, Sullivan & Sharp."
Although the proposed corporation was never formed, Mrs. Allan did take various steps to set up a trust, the purpose of which was to provide funds for the education of children of Baptist missionaries and members of the Allan-Bryant family. Mrs. Allan engaged attorneys, chose trustees, arranged an initial meeting of proposed trustees, deposited $25,000 in a savings account as the initial fund for the project, and arranged for an application to be filed with the IRS for a ruling as to whether the trust would be tax exampt. An unexecuted draft of the trust instrument was finally submitted to the IRS on March 1, 1971, for a ruling on its tax status. (It was feared that a favorable status might be denied because of the instrument's provision for educational grants to members of Mrs. Allan's family; Mrs. Allan allegedly directed that such provisions be deleted in the event that they prevented a tax exempt status.)
On March 26, 1971, Mrs. Allan republished her will by means of a codicil which included the following provision:

"ITEM TEN: It is my intention that by executing this codicil the items of personal property described in Item Nine, above, shall not be contained in or considered as a part of the `residue and remainder of my estate' as described in Item Six of my said will dated October 26, 1970. All other gifts, devises, bequests, instructions, nominations and appointments in my said will dated October 26, 1970, shall remain unchanged."
Mrs. Allan died less than a month later, on April 15, 1971. The trust instrument was never executed.
The wills of both Mrs. and Mrs. Allan were admitted to probate with Birmingham Trust National Bank [BTNB] named as executor of both estates (as provided under both wills). In the proceeding to probate the will of Mrs. Allan, BTNB alleged that Mrs. Allan exercised her testamentary power of appointment. That allegation was contested by Alfred Swedlaw, the administrator ad litem of Mr. Allan's estate. Mr. Swedlaw insisted that the property subject to Mrs. Allan's power of appointment should be disposed of under the terms of Mr. Allan's will due to Mrs. Allan's alleged failure to exercise her power effectively.
Both estates were then transferred to circuit court where the circuit court determined that Mrs. Allan's power was not effectively exercised and that consequently the property subject thereto remained a part of the estate of Mr. Allan and would pass under his will.
BTNB did not take an appeal. However, the Attorney General did appeal from the ruling of the circuit court, contending that the circuit court erred in failing to *851 find clear evidence of the terms and conditions that Mrs. Allan intended for her "Allan-Bryant Educational Foundation, Inc."
The appellees on this appeal are Mr. Swedlaw, the administrator ad litem of the estate of Mr. Allan and the American Bible Society, a remainderman under the family trust set up under Mr. Allan's will. Both appellees argue that the Attorney General's appeal should be dismissed or else the circuit court's decree should be affirmed.
The basic substantive issue on this appeal is the validity of a gift in trust to a trust entity which the testatrix in her will directed her executor to create after her death where the will failed to specify the purposes or details of the proposed trust corporation.
It is undisputed that the entity referred to in Mrs. Allan's will as "The Allan-Bryant Educational Foundation, Inc." is nonexistent. However, this circumstance alone is not necessarily fatal to Mrs. Allan's attempted gift. The authorities are in agreement that a valid testamentary gift may be made to a corporation to be formed in the future. 4 Scott, The Law of Trusts § 401.8, at 3163-64 (3d ed. 1967); 15 Am. Jur.2d Charities § 44 (1964); 14 C.J.S.Charities § 32 (1939). Courts have been favorably disposed towards such gifts where the gift is in trust to a charitable corporation and the title to the gift property is to vest in the trustees immediately upon the death of the testator, thereby precluding any possibility of a violation of the rule against perpetuities. 1 Bowe-Parker, Page on Wills §17.6, at 817 (rev. ed. 1960). Similarly, in considering a gift to a nonexistent association, this Court has concluded,
". . . If the trust is charitable and vests in the trustee at death of testator and payable according to directions in the will for the benefit of charities then or thereafter ascertainable, it vests within the meaning of the common law so as not to be affected by the principle of remoteness, as we have fully here discussed the subject. . . ."
Tumlin v. Troy Bank & Trust Co., 258 Ala. 238, 246, 61 So.2d 817, 824 (1952).
Moreover, this Court has on several occasions upheld the validity of a testamentary gift in trust to a nonexistent charitable entity when the will in question specifically authorized an executor or trustee to create such an entity upon the testator's death. E.g., Henderson v. Troy Bank & Trust Co., 250 Ala. 456, 34 So.2d 835 (1948); Noble v. First Nat'l Bank, 236 Ala. 499, 183 So. 393 (1938).
However, in each of these instances, the will not only specified the particular charitable purpose of the proposed entity but also outlined various details governing its creation and operation. Because the wills in these cases gave rather full descriptions of the purposes and details of the proposed entities, there was no need to refer to materials extrinsic to the will in order to create the proposed entity. In contrast, Mrs. Allan's will does not specify the charitable purpose of the proposed entity,[1] nor does it include instructions as to the details or manner in which the entity is to be created or operated. Mrs. Allan's intent with regard to the creation of the proposed entity cannot be ascertained *852 from the face of the will and, consequently, Mrs. Allan's creation of the Allan Bryant Foundation cannot be accomplished without resort to extrinsic materials.
Resort to materials extrinsic to a will as an aid in construing it has not been freely permitted by our courts. To allow unbridled or extensive reference to extrinsic materials would undermine the policies behind the testamentary formalities required by statute. For this reason, resort to extrinsic materials has been restricted to those situations in which either the doctrine of "incorporation by reference" or the doctrine of "facts of independent significance" is applicable. Thus,
". . . if the purposes of the charitable trust cannot be ascertained from the will itself or from an instrument properly incorporated in the will or from facts which have significance apart from their effect upon the disposition of the property, the intended charitable trust fails. . . ."
4 Scott, The Law of Trusts § 358, at 2807 (3d ed. 1967).
The Attorney General argues that the will's failure to specify the charitable nature of the trust and its charitable purposes can be overcome by reference to one of these doctrines. In the trial court voluminous materials extrinsic to the will were submitted purportedly to show the "written terms and conditions" which the will said had been given to the law firm of Sadler, Sadler, Sullivan & Sharp. We find that these extrinsic materials cannot be considered by the Court on the basis of either of the doctrines advanced by the Attorney General.
The requirements of the doctrine of "incorporation by reference" are not met in this case. "The document which is to be incorporated must have been in existence at the time the will was executed, it must be referred to in the will, and it must be identified by clear and satisfactory proof as the paper referred to." Holt, Testate Succession in Alabama: Part I, 24 Ala.L.Rev. 221, 243-44 (1971).
Mrs. Allan's will does not describe with sufficient certainty any writing allegedly intended to be incorporated into her will. In order for the doctrine of "incorporation by reference" to be applicable, the "reference must be so clear and distinct as that there can be no reasonable room for mistake of intention." Matthews v. McDade, 72 Ala. 377, 385 (1882). We interpret this language from Matthews to mean not only that the testator's intention to incorporate the writing must be clear but also that the identify of the writing intended to be incorporated must be clear.
"In order to operate as an incorporation, the will must refer to the instrument to be incorporated and must describe it with sufficient certainty that it may be identified and distinguished from other similar documents. . . ."

* * *
". . . The description in the will must be in language which is so clear and unambiguous that the identity of the documents is readily established. . . ."
2 Bowe-Parker, Page on Wills § 19.23, at 96-97 (rev. ed. 1960).
Our review of the various extrinsic materials included in the transcript of this case has failed to convince us that any of those materials are clearly the materials referred to in Mrs. Allan's will as "the written terms and conditions which I have given to the law firm of Sadler, Sadler, Sullivan & Sharp." We agree with the trial court that the "voluminous writings, documents, letters and testimony [in the record] . . . are confusing, conflicting, and inconclusive . . ."
Nor can the doctrine of "facts of independent significance" be relied upon to justify reference to materials outside the *853 will in this case because the requirements of that doctrine are not present here. "The chief requirement is that the document referred to in the will have a separate legal identity and existence, and not be solely for the purpose of supplementing the will." Holt, Testate Succession in Alabama: Part I, 24 Ala.L.Rev. 221, 244 (1971).
The case of First Nat'l Bank v. Klein, 285 Ala. 505, 234 So.2d 42 (1970), considers the requirements of this doctrine. In that case, the testator attempted to make a devise to the "residuary legatees and residuary beneficiaries of his [Clarence's] estate under his last will and testament." Id. at 509, 234 So.2d at 46. One issue before this Court was whether the devise could be found valid by reliance on the doctrine of "facts of independent significance." The Court found that it could be: "The words, `residuary legatees and residuary beneficiaries of his estate under his last will and testament,' designate who are the recipients of Clarence's bounty and are sufficiently certain to identify the class intended and are not void for uncertainty." Id.
In Klein, the facts of independent significance were set out in a document which had been clearly identified in the will being construed in Klein. Moreover, the document (Clarence's will) which contained the independent facts had been admitted to probate, and therefore its genuineness was certain. In the instant case, the matter which the appellant refers to as facts of independent significance is rife with ambiguity and confusion.
Moreover, to allow reliance on the doctrine of "facts of independent significance" under the facts of this case would result in an impermissible evasion of the testamentary formalities. The protection of these testamentary formalities is vital, as has been previously recognized by this Court:
"Nothing we have written is to be understood to indicate that writings not a part of the will may be looked to either as advisory or mandatory in the construction of wills. All the safeguards thrown about the excution of wills would fail of their purpose, if by indirection they may be thus added to or modified."
Parrish v. Gamble, 234 Ala. 220, 225, 174 So. 303, 306 (1937). We think the policies on which we are relying are well explained in the following:
"Where a writing is involved in the future act, the courts have frequently encountered some difficulty in finding sufficient independent significance to justify applying the doctrine. This is best seen in the cases where the future writing involves no inter vivos disposition of property but merely supplies a list of persons to be beneficiaries under a previously drawn will or a list of the property to be devised. Here the act referred to in the will has as its sole purpose that of permitting the testator to add to or change his will by unattested, nontestamentary methods. Such acts are obviously invalid and will be given no effect whatsoever, with the result being that the gift in the will fails. Where the reference in the will is to past acts or writings, as close a scrutiny to find independent significance is not required for there is clearly no alteration or change in the will on account of the act nor is a change of the will possible under such a reference. For future unattested writings to be brought within the scope of facts of independent significance, `The means so provided should not be any act whose sole or chief purpose is that of complementing the will. It should have the force and effect of an independent legal transaction.' [quoting Evans, Incorporation by Reference, Integration and Non-Testamentary Act, 25 Colum.L.Rev. 879, 902.]"
Bowe-Parker, Page on Wills § 1934, at 122 (rev. ed. 1960).
*854 Before concluding some comment is necessary in reply to the Attorney General's argument that the doctrines of cy pres and approximation can be applied so as to validate the charitable trust purportedly created under Mrs. Allan's will.
The doctrine of cy pres and approximation were never intended as tools for use in the construction of wills or as a means by which a trust might be created. These theories have been used by this Court as a means by which the Court can allow deviation from the terms of an existing trust. E.g., Tumlin v. Troy Bank & Trust Co., 258 Ala. 238, 61 So.2d 817 (1952); Thurlow v. Berry, 249 Ala. 597, 32 So.2d 526 (1947); Lovelace v. Marion Institute, 215 Ala. 271, 110 So. 381 (1926). But these doctrines have never been applied by this Court as a means of creating a trust.
In the instant case, the first and primary obstacle which must be overcome if the trust is to be created is the rule that, generally, extrinsic materials are not admissible for the purpose of supplementing the testator's desires as recorded in his will. The doctrine of cy pres is not available as a means of justifying reference to materials extrinsic to a will to create a trust. In the event that some other basis can be found for overcoming the rule against reference to extrinsic writings and the trust is created, the doctrines of cy pres and approximation may then become applicable for the purpose of changing the details under which the trust is to operate.
Furthermore, cy pres is applicable only to charitable trusts. "Whether a gift [by will] is charitable or not depends on the intention of the testator as manifested by the will." 5 Bowe-Parker, Page on Wills § 41.7, at 185 (rev. ed. 1960). Accord, 4 Scott, The Law of Trusts § 351, at 2794 (3d ed. 1967). In this case there is no expression of charitable intent in the will itself. The doctrines of "incorporation by reference" and "facts of independent signifiance" are not, as we have already stated, available under these facts to justify reference to extrinsic materials. Because no valid charitable trust was created by the will, the doctrine of cy pres is inapplicable. See First Portland Nat'l Bank v. Kaler-Vaill Mem. Home, 155 Me. 50, 151 A.2d 708 (1959).
In view of the result we have reached on the merits of this case, we find it unnecessary to consider the appellees' contention that the Attorney General does not have standing to prosecute this appeal.
AFFIRMED.
HEFLIN, C.J., and JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
MADDOX, J., dissents.
FAULKNER, J., not sitting.
MADDOX, Justice (dissenting).
I believe the record in this case, and indeed the majority opinion itself, contains sufficient facts to show that Mrs. Allan intended to establish a charitable trust for the education of missionary children, and wanted the trust to qualify as a charitable trust for Internal Revenue Service purposes.
Consequently, I would apply two basic rules:
(1) The intent of the testator is always the polestar in the construction of wills, and
(2) Charitable uses are favored, and the construction of all instruments where they are concerned is liberal in their behalf.
I believe that the majority errs in failing to find from the record that Mrs. Allan intended to make a gift to a charitable use. I believe that the majority makes this error because it has applied strict rules of construction instead of liberal ones as the law provides.
*855 In Russell v. Allen, 107 U.S. 163, 167, 2 S.Ct. 327, 330, 27 L.Ed. 397 (1882), the Supreme Court of the United States said:
". . . [T]rusts for public charitable purposes are upheld under circumstances under which private trusts would fail."
Furthermore, I find no objection to the fact that Mrs. Allan directed her executor to form the corporation so it could take the gift. Testamentary gifts to charitable organizations, even those to be formed in the future, are valid. Jones v. Habersham, 107 U.S. 174, 2 S.Ct. 336, 27 L.Ed. 401 (1882).
In Ould v. Washington Hospital, Etc., 95 U.S. 303, 313, 24 L.Ed. 450 (1877), the court stated the rule:
"A devise to a corporation to be created by the legislature is good as an executory devise. A distinction is taken between a devise in praesenti to one incapable, and a devise in futuro to an artificial being, to be created and enabled to take. Angell & Ames on Corp., sec. 184; Porter's Case, 1 Co. 24; Attorney General v. Bonyer, 3 Ves. 714; Inglis v. The Trustees of the Sailor's Snug Harbor, 3 Pet. 99 [7 L.Ed. 617]; Sanderson v. White, 18 Pick. (Mass.) 328.
"At common law, lands may be granted to pious uses before there is a grantee competent to take. In the meantime, the fee will lie in abeyance. It will vest when the grantee exists. Town of Pawlet v. Clark, 9 Cranch. [(13 U.S.)] 292, [3 L.Ed. 735]. See also, Beatty v. Kurtz, 2 Pet. [(27 U.S.)] [566], [7 L.Ed. 521] and Vincennes University v. Indiana, 14 How. [(55 U.S.)] 268, [14 L.Ed. 416].
"Charitable uses are favorites with courts of equity. The construction of all instruments where they are concerned is liberal in their behalf. Mills v. Farmer, 19 Ves. 487, McGill [Magill] v. Brown [Pa.Bright 347], supra; Perry on Trusts, sect. 709. Even the stern rule against perpetuities is relaxed for their benefit."
In short, I think the evidence is clear that Mrs. Allan intended to exercise the power of appointment given to her in her husband's will, that she intended to make a gift to a charitable organization, which she directed her executor, not the courts, to form. The trial court and this court say that they cannot tell which instructions the testatrix was referring to when she mentioned them in her will. With all due respect, the testatrix did not direct the court to form the corporation, she directed her executor to form it.
There is no evidence, of which I am aware, that the purpose of the corporation to be formed was anything other than for a charitable purpose. In Ould v. Washington Hospital, Etc., supra, the court said:
"A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and the well-being of social man. Perry on Trusts, sect. 687."
If we were dealing with a private trust, as opposed to a charitable one, I would agree with the majority opinion 100%. However, here, I would look to the extrinsic materials to answer this questionDid Mrs. Allan intend a charitable gift? If so, the law is clear that if a charitable use was intended, the testator's wishes will be carried out.
I have personally reviewed the evidence in this case, and it is apparent to me that Mrs. Allan desired a specific category of scholarship recipients (children of missionaries), with the "family preference" provision to yield if it imperiled the charitable exemption for federal tax purposes. Consequently, I must respectfully dissent.
NOTES
[1] The only possible indication of a charitable intent is the inclusion of the words "Educational Foundation" in the proposed name for the corporation. The mere words "educational" and "foundation" have no inherent connotation of charitable purpose. Because either or both of these words might just as easily describe some noncharitable entity, their inclusion in the proposed name for the corporation is not sufficient in itself to indicate a charitable intent on the part of the testator. See First Portland Nat'l Bank v. Kaler-Vaill Memorial Home, 155 Me. 50, 70, 151 A.2d 708, 719 (1959); In re Sutro's Estate, 155 Cal. 727, 735, 102 P. 920, 922 (1909); In re Shattuck's Will, 193 N.Y. 446, 452, 86 N.E. 455, 456 (1908).