This declaratory judgment action was commenced by several plaintiffs, among them the Macedonia United Methodist Church of Northport (the "Church"), who sought the construction of the will of Octavia Hagler and of certain mortgages that she had accepted prior to her death, which occurred on April 6, 1983. The Church contended in its complaint that the will and the mortgages in question established a trust or trusts of the mortgage proceeds in its favor and the plaintiffs named as defendants Hagler's heirs and the executrix of her estate. The Church also contended that the funds making up the trust corpus were being improperly withheld from it by the executrix for the benefit of Hagler's heirs, and it asked the trial court to order that these funds be released to the Church according to the terms of the alleged trust or trusts.
After a hearing at which only documentary evidence was introduced, the trial court ruled in favor of the Church and the Church's fellow plaintiffs, entering a judgment establishing a trust in favor of the Church. Two of the defendants, Don Tierce and Festus Tierce, now appeal from that judgment, asserting that the trial court erred in establishing the trust in favor of the Church. We affirm in part, reverse in part, and remand.
Many of the operative facts in this case concern certain sales of real property by the decedent, Octavia Hagler. A few years prior to her death, she sold four parcels of this property to various purchasers, receiving in exchange four promissory notes providing *Page 453 
for annual payments of portions of the purchase price. Each note was secured by a separate mortgage issued to the decedent as a consequence of each transaction. The first such sale was to Bobby C. Hagler, and this sale took place on December 11, 1980. The mortgage securing the debt resulting from this sale provided as follows:
 "This mortgage is executed by the Mortgagor and accepted by the Mortgagee with the distinct understanding and agreement that the payments will be paid to the Mortgagee as long as she lives. After the death of the Mortgagee, the balance of the mortgage indebtedness will belong to Macedonia Methodist Church of Northport, Alabama, R.F.D. and the money will be invested by the Church in accounts guaranteed by the Federal Deposit Insurance Corporation and the income will be used for maintaining the Church. The amount paid to Macedonia Methodist Church will be deposited and become a part of the Trust fund administered by the Church and the income from said amount in said Trust Fund will be used for the upkeep of the Church."
Virtually identical language was also placed in the note given as a consequence of this sale.
The second sale took place one week later, on December 18, 1980. This sale was to Joe Hillary Shirley and Jean R. Shirley, and it was also consummated by the giving of a note and mortgage. Each of these documents contained language concerning the mortgage proceeds virtually identical to that contained in the documents issued in the previous sale to Bobby C. Hagler, and the mortgage, like the mortgage from Hagler, was recorded. Henceforth, we will refer to these two sales collectively as the "Hagler-Shirley Transfers."
The third transfer took place on January 29, 1981. In this sale, another parcel of land was conveyed to Ralph Harden and Louise T. Harden. This conveyance, henceforth referred to as the "Harden Transfer," was also consummated by the giving of a mortgage, and, presumably a note, although the note is not part of the record on this appeal. However, none of the language of the Hagler-Shirley Transfers concerning the Church's trust fund was contained in the mortgage relating to the Harden Transfer, nor was there any other indication of a transfer of the right to the mortgage proceeds arising from this sale.[1]
The fourth sale was to Rogene S. Tierce and Sybil C. Tierce, and it took place on August 25, 1981. As with the previous sales, the decedent accepted a note and mortgage from the buyers. The mortgage given as a consequence of this sale contained the following language concerning a possible transfer in trust, language which differed significantly from that of the Hagler-Shirley Transfers:
 "In the event of the death of Octavia T. Hagler, the balance of the payments are to be made to the Trustee of a Trust which will be set up for the benefit of Macedonia Methodist Church. However, the Mortgagee has the right to cancel this."
The note evidencing the debt resulting from this sale, however, contains no such language. We will subsequently refer to this conveyance as the "Tierce Transfer," bearing in mind that the Tierces who purchased this property are not the parties prosecuting this appeal.
In addition to a consideration of these notes and mortgages, our resolution of this case also depends upon a consideration of the will of the decedent. This will was executed March 24, 1981, subsequent to the Hagler-Shirley and Harden Transfers, but prior to the Tierce Transfer. The pertinent provision of this will provides as follows:
"ITEM TWO:
 "I now own three mortgages and one or more of them may not be paid in full before my death. Regardless of the statements contained in the said mortgages *Page 454 
concerning the payment of balances to the Macedonia United Methodist Church located near Northport, Alabama, on Alabama State Highway 69, I now will to The First National Bank of Tuskaloosa, N.A., as Trustee acting under a certain Trust Agreement entered into and with The First National Bank of Tuskaloosa, N.A., for the purposes stated in said Trust Agreement.
 "[The will then identified the three referenced mortgages as being the Hagler-Shirley and Harden Transfers noted above.]
 "The Trust Agreement to be made and entered into by me with The First National Bank of Tuskaloosa, N.A., will be in memory of my beloved husband, John M. Hagler."[2]
A codicil revoking another section of the will was executed on October 20, 1981.
In addition to the above documents, we will also refer to a trust instrument that appears in the record, although the parties disagree as to whether this document was properly admitted into evidence. This document purports to establish an inter vivos trust with the Church as the beneficiary and the First National Bank of Tuskaloosa as trustee. Importantly, this trust instrument was never executed by the parties, and it is uncontradicted that the inter vivos trust described therein was never actually established by the decedent. We also note that the date of this instrument's drafting can only be narrowed to sometime within the year 1981, which is recited on several occasions in the language of the unexecuted trust instrument.
Construing the unexecuted trust instrument and the will together, the trial court concluded that a valid trust had been created in favor of the Church. The trial court apparently regarded the two documents as together creating a trust that conveyed all the disputed parcels to a trustee for the benefit of the Church. As the following analysis will show, the trial court was in error in reaching this conclusion.
Before proceeding to that analysis, however, we note initially that our standard of review in this case establishes no presumption of correctness in regard to the trial court's judgment. This case involved no oral testimony before the trial court. With the exception of the disputed trust instrument, the evidence was stipulated by the parties. Therefore, we review the case "without any presumption in favor of the trial court's findings." Gibson v. Jones, 293 Ala. 616,619, 308 So.2d 692, 694 (1975).
 I. The Will and Trust Instrument
We begin our analysis with the materials primarily relied upon by the trial court — the will and the trust instrument. We note that the defendants vigorously argue that the trust instrument should not have been considered by the trial court, on the ground that it was not part of the evidence stipulated to by the parties. Because we hold that the trial court incorrectly determined that either of these documents established a trust, we need not consider the defendants' particular argument for excluding the trust instrument, and, for the purposes of this appeal, we will assume that the trust instrument was properly before the trial court.
As has been noted many times by this Court, "[t]he intention of the testator is always the polestar in the construction of wills, and the cardinal rule is to ascertain the intention of the testator and give it effect if not prohibited by law." Mastin v. First Nat. Bank of Mobile,278 Ala. 251, 257, 177 So.2d 808, 813 (1965); see Ala. Code (1975), § 43-8-222. In ascertaining the testator's intentions, we consider the will as whole, and we may consider the language of the will in light of the facts and circumstances attending its drafting. See, e.g., Mastin v. First Nat. Bank of Mobile,278 Ala. at 257, 177 So.2d at 813.
Applying these principles to the case at bar, we think it beyond doubt that the testatrix tentatively intended by this will to *Page 455 
devise[3] the disputed mortgage proceeds to an inter vivos trust established by the testatrix. The will is unambiguously a "pour-over" will, and we may assume that the unexecuted trust instrument represents the contemplated inter vivos trust into which the proceeds noted in "Item Two" of the will were to be devised.
The trust instrument, however, was never executed, nor was the trust referenced therein ever otherwise established by the testatrix. Consequently, we think it clear that this attempted devise fails and that the devise in "Item Two" of the will therefore lapses.
The attempted devise fails in the first instance because it does not conform with Ala. Code (1975) § 43-8-140, which sets forth the procedures for establishing pour-over gifts to an inter vivos trust. One requirement of that section is that the trust's "terms [be] set forth in a written instrument (other than a will) executed before or concurrently with the executionof the testator's will." (Emphasis added.) The trust instrument clearly does not meet this requirement, as it was never executed.
The attempted devise fails in the second instance because it does not meet the requirements of certain other grounds that might be invoked to sustain it. We consider these grounds with some hesitation, because the legislature, in adopting § 43-8-140, may have intended that the procedure set forth therein be the exclusive means of establishing testamentary additions to inter vivos trusts. Because we find, however, that the other grounds for upholding the devise in question cannot be properly invoked in this case, we need not decide the question of § 43-8-140's exclusivity, and we expressly reserve that question for later decision.
The will states that the proceeds from three of the mortgages were to be devised "to the First National Bank of Tuskaloosa, N.A., as Trustee acting under a certain Trust Agreement entered into and with [the Trustee] for the purposes stated in said Trust Agreement," and notes that the "Trust Agreement to be made and entered into . . . will be in memory of my beloved husband."
It is well settled that documents not executed with the formalities required of wills can supplement the terms of a will in certain limited circumstances, including documents referencing or creating charitable trusts. See Baxley v.Birmingham Trust Nat. Bank, 334 So.2d 848 (Ala. 1976);Restatement (Second) of Trusts § 358 (1959). These circumstances exist where the terms of the trust can be gathered from a document or documents incorporated by reference
into the will, and where the terms of the trust can be adduced from a fact of independent significance. Baxley, supra;Restatement (Second) of Trusts, supra.
Although Alabama adheres to the doctrine of incorporation by reference, see § 43-8-139, the requirements of that doctrine are not met in the present case. " 'The document which is to be incorporated must have been in existence at the time the willwas executed, it must be referred to in the will, and it must be identified by clear and satisfactory proof as the paper referred to.' " Baxley v. Birmingham Trust Nat. Bank, 334 So.2d at 852 (quoting Holt, Testate Succession in Alabama: Part I, 24 Ala.L.Rev. 221, 243-44 (1971)) (emphasis added); see First Nat.Bank of Birmingham v. Klein, 285 Ala. 505, 234 So.2d 42 (1970);Mastin v. First Nat. of Mobile, 278 Ala. 251, 177 So.2d 808
(1965). There is insufficient proof in this case that the trust document in question was in existence at the time of the execution of the will.
As noted previously, the drafting of the trust document can be narrowed only to sometime within the year 1981, judging from the language of the document itself. Moreover, the testatrix died in 1983. Therefore, she could have asked her lawyer to draft this document at any time during *Page 456 
the year 1981, and we note that her lawyer was apparently also dead at the time of this trial. Thus, no evidence was introduced that further narrows the date of the drafting of the trust document. Therefore, it would appear to be beyond dispute that this document could have come into existence at any time during the year 1981. The will, however, was clearly executed on March 24, 1981, and the codicil appended thereto was executed on October 20, 1981. Assuming that this codicil republished the will on October 20,[4] there nevertheless would remain a period of nearly two and one-half months in 1981 during which the trust document could have been drafted subsequent to the republication of the will. Moreover, the will itself is ambiguous as to the existence of the trust document, as "Item Two," quoted at length above, refers to the trust both as being in existence and as yet "to be made and entered into." Thus, the proof that the trust document was in existence at the time of the will's execution is highly ambiguous at best, and it falls far short of the standard required to incorporate the document by reference into the will. An "incorporated" documentmust be in existence when the will is executed, Baxley v.Birmingham Trust Nat. Bank, supra; it is not enough to show that the document might have been in existence.
Likewise, the doctrine of "facts of independent significance," also adhered to in Alabama, see § 43-8-141, is inapplicable to this case. " 'The chief requirement [of the doctrine] is that the document referred to in the will have a separate legal identity and existence, and not be solely for the purpose of supplementing the will,' " Baxley v. BirminghamTrust Nat. Bank, 334 So.2d, at 853 (quoting Holt, TestateSuccession in Alabama: Part I, 24 Ala.L.Rev. 221, 244 (1971)); see First Nat. Bank of Birmingham v. Klein, 285 Ala. 505,234 So.2d 42 (1970). In the instant case, it is undisputed that the trust referred to in the trust document was never established. Hence, this "trust" never rose to the level of a "separate legal identity," and the doctrine of facts of independent significance is inapplicable. "It is not the trust instrument but the trust itself that has independent significance." 1A A. Scott W. Fratcher, The Law of Trusts § 54.3, at 12-13 (4th ed. 1987); see Restatement (Second) of Trusts, § 54 comment f (1959). Thus, the doctrine of facts of independent significance, while it can sometimes serve as "an escape mechanism from the strict requirements of incorporation by reference," First Nat. Bank of Birmingham v. Klein,285 Ala. at 509, 234 So.2d at 46, cannot properly be invoked in the instant case.
Accordingly, no charitable trust was established by the will in this case. The attempted pour-over devise into the "trust" fails, because of a lack of compliance with the requirements of § 43-8-140. Similarly, the trust instrument cannot be regarded as having been incorporated by reference, and the "trust" itself never achieved a "separate legal identity"; this fact foreclosed application of the doctrine of facts of independent significance. Therefore, even if we wished to assume that the testatrix's actual intention was to establish a trust by will, a trust similar to that evidenced by the trust instrument, we could not do so, because such a trust would be "prohibited by law." Mastin v. First Alabama Bank,278 Ala. at 251, 177 So.2d at 813.
We should note, however, that the evidence of the testatrix's intent in this case does not require such an assumption, and that, in fact, her actions could well indicate the opposite intent. As noted previously, the will is clearly a "pour-over will," and we must assume that the testatrix realized that such a testamentary scheme required a trust "receptacle" to render it operative. The testatrix lived more than two years after the will was executed and after she *Page 457 
would have been made aware of the necessity of establishing a trust, yet she made no effort to consummate the pour-over scheme. We think that such inaction comports at least as well with an intention to allow the devise in the will to lapse as it does with an intention to make the devise. We note in this regard that § 43-8-140 provides that the revocation of the inter vivos trust underlying a testator's pour-over scheme results in the lapse of any devise in the will to that trust. This is perhaps a legislative determination that a testator, by such a revocation, evidences an intent that the devise is to be distributed according to a residuary clause or by intestacy, rather than by the terms of the trust. A failure to create the underlying trust in the first place ought to be given a similar effect, at least in the circumstances in which this case arises. Consequently, even if some legal means to establish this trust existed, we are not at all sure that our "polestar," the intention of the testatrix, would lead us inescapably to the conclusion that such a trust was to be established.
 II. The Notes and Mortgages
Although the trial court erred in upholding a trust on the basis of the will and the trust instrument, we must also consider the dispositions contained within the notes and mortgages referred to previously. If any of these documents created valid inter vivos trusts not subsequently revoked by the will, then the trial court's judgment is due to be upheld as to each such valid trust,[5] in spite of the fact that the attempted devises in the will must be regarded as having lapsed.
 A. The Tierce Transfer
The language in the Tierce Transfer purporting to create a trust is unenforceable due to the lack of a present intention
to create the trust. That language provides only that the balance of mortgage payments due the decedent at her death "are to be made to the Trustee of the Trust which will be set up for the benefit of [the Church]." "A manifestation of intention to create a trust inter vivos at some time subsequent to the time of manifestation does not create a trust." Restatement(Second) of Trusts § 26 (1959); see 1 A. Scott W. Fratcher,The Law of Trusts § 26 (4th ed. 1987). Accordingly, no inter vivos trust was created by this language. In view of the fact that no valid testamentary trust was established with respect to this property, and that, indeed, these particular proceeds were not referenced in either the will or the trust document, the trial court was in error in including the proceeds from the Tierce Transfer in the trust it established in favor of the Church.
 B. The Harden Transfer
The proceeds from the Harden Transfer were also improperly included in the trust established by the trial court. It is undisputed that the documents exchanged in the Harden Transfer contained no words indicating a gift in trust of those proceeds, and that no other manifestation of an intention to create an inter vivos trust was made by the decedent with respect to these proceeds. Although no particular words are required to manifest an intent to create a trust, "an express trust, according to logic and authority, cannot exist without some such manifestation." Comment,The Law of Trusts in Alabama, 24 Ala.L.Rev. 467, 471 (1973). There being no such manifestation in regard to these proceeds, no inter vivos trust was created, and, in view of the fact that no valid testamentary trust was established by the testatrix's will, the trial court erred in including these proceeds in the trust it established in favor of the Church. *Page 458 
 C. The Hagler-Shirley Transfers
As noted previously, the Hagler-Shirley Transfers included documents containing language concerning an attempted gift in trust to the Church. Moreover, these transfers were irrevocable, because the settlor did not expressly reserve the right to revoke the transfers in trust for the benefit of the Church. See Underwood v. Bank of Huntsville, 494 So.2d 619
(Ala. 1986); Restatement (Second) of Trusts § 330 (1959); Comment, The Law of Trusts in Alabama, 25 Ala.L.Rev. 467, 523-27 (1973). Thus, the attempted revocation in "Item Two" of the will, quoted at length above, is of no effect in determining the validity of these gifts in trust. If these inter vivos transfers are valid, then the fact that the subsequent testamentary devise fails is of no import in sustaining the prior inter vivos transfers. As the following analysis will show, we hold that these two transfers resulted in valid inter vivos transfers in trust for the benefit of the Church, and that the trial court was correct in establishing a trust in favor of the Church as to these proceeds.
There is no doubt from the previously quoted language of these transfers that a transfer in trust was intended. The issues presented by these transfers concern the related matters of whether a present intent to convey an interest in the property was manifested by the language of the notes and mortgages, and whether such a transfer actually occurred.
The problem arises because the decedent expressly provided that she was to receive the mortgage proceeds during her life and that, upon her death, the proceeds were to go in trust to the Church for the specified purpose of building maintenance. The defendants argue that the language to this effect manifests an intent to establish a trust in the future, and is therefore invalid, as was the case with the Tierce Transfer. We disagree.
It is undisputed that mortgage proceeds may be held in trust, City Bank Trust Co. v. Gardner, 225 Ala. 136,142 So. 535 (1932); Hill v. Hill, 216 Ala. 435, 113 So. 306 (1927), and that such proceeds are considered to be personal property, CityBank Trust Co., supra; Hill, supra. Moreover, we have recognized that the reservation of a life estate in personalty does not serve to defeat a gift of the remainder interest in such personalty, so long as the gift of the remainder interest is reduced to a writing. Livingston v. Powell, 257 Ala. 38,57 So.2d 521 (1952). In addition, Hill v. Hill, supra, recognizes by implication that a remainder interest in mortgage proceeds is permissible, and we also note that
 "[i]t is lawful to give a present vested right to future enjoyment. Thus there may be a present gift of a future interest in a fund or in the balance of the fund remaining when the time for enjoyment arrives; and, it has been held, such a gift is valid even though the donor reserves the power to draw out the fund. A conveyance to one as life tenant with power to dispose of or consume is not inconsistent with a present valid gift of the remainder."
38 C.J.S. Gifts § 41, at 820-21 (1943).
The language in the documents exchanged as a result of the Hagler-Shirley Transfers is consistent with the construction that the decedent intended a present transfer in trust of a remainder interest in the mortgage proceeds for the benefit of the Church, retaining to herself a life estate in the proceeds. The transfer of this remainder interest was irrevocable and tied to no particular contingency; it was thus not ambulatory or testamentary in nature, but represented an attempt to make a present and absolute gift in trust of the balance of the mortgage proceeds existing at the time of the testatrix's death. Accordingly, we hold that this transfer in trust does not fail for lack of a present intent to create a trust. Unlike the Tierce Transfer, in which the proceeds were explicitly to go to a trust "which will be set-up" in the future, the Hagler-Shirley Transfers represent present transfers in trust of a future interest in the mortgage proceeds.[6] *Page 459 
The defendants also argue that the Hagler-Shirley Transfers failed because there was no effective delivery of the interest. We disagree.
These attempted trusts sprang from gratuitous transfers to the Church trust fund. Therefore, the question of whether an effective delivery occurred must be answered by reference to the general law of gifts. In this regard, we have recognized that the evidence in support of the gift must be clear and convincing. DeMouy v. Jepson, 255 Ala. 337, 51 So.2d 506
(1951). We have also recognized, however, that "the rule [requiring delivery in the case of a gratuitous transfer] has been relaxed as to personal property not capable of manual delivery. In such a case a symbolic delivery is held sufficient. . . ." First Nat. Bank of Birmingham v. Hammel,252 Ala. 624, 626, 42 So.2d 459, 460 (1949). We are concerned here not just with intangible personal property — choses in action — but with a future interest in that property, further incorporealizing the interest conveyed. That such an interest is incapable of actual manual delivery would appear to be beyond dispute. We think, therefore, that the specification in the notes and mortgages of the interest to be conveyed and the subsequent recordation of those mortgages is a sufficient "symbolic" or "constructive" transfer to satisfy the delivery requirement in this case. We regard the recordation of the mortgages as particularly persuasive that "delivery" occurred in this case, in view of the rule, long recognized in this state, that the recording of a deed by a grantor can often constitute sufficient delivery of the instrument to convey title, if that is the intention of the grantor. See Henslee v.Henslee, 263 Ala. 287, 82 So.2d 222 (1955); Gulf Red CedarLumber Co. v. Crenshaw, 169 Ala. 606, 53 So. 812 (1910).
We also reject the defendant's contention that there was no valid transfer in trust of the mortgage proceeds, due to a lack of acceptance. Although "acceptance" by the donee of the gift is an essential requisite to consummation of a gratuitous transfer, we note that such acceptance may be implied or presumed in the absence of evidence of the donee's contrary intention, see Henslee, supra; Gulf Red Cedar LumberCo., supra; R. Brown W. Raushenbush, The Law of PersonalProperty 127-28 (1975); 38 Am.Jur.2d, Gifts § 96 (1968), and that acceptance is frequently presumed or implied in the transfer of notes, see Annot., Delivery of Bill or Note ofThird Person by Way of Gift, 25 A.L.R. 642, 646 (1923). In view of these rules, and in view of the incorporeal nature of the future interest transferred in this case and the concommitant difficulty of manifesting its "acceptance" in the first place, we will imply acceptance by the donee on these facts, there being no manifestation of a contrary intent on the part of the donee. See also Watson v. Watson, 283 Ala. 214, 215 So.2d 290
(1968) (acceptance of trust is ordinarily presumed).
In summary, we hold that the evidence in this case, considered in light of the applicable law and presumptions, establishes that a valid inter vivos trust was etablished in regard to the proceeds of the Hagler-Shirley Transfers, and that the gratuitous transfers giving rise to the trust are supported by clear and convincing evidence.
 III. Conclusion
For the foregoing reasons, the trial court incorrectly established the trusts allegedly created under the testatrix's will and the trust instrument. However, valid inter vivos transfers in trust were made as to the mortgage proceeds arising from the Hagler-Shirley Transfers. Accordingly, the trial court's establishment of a trust as regards these proceeds was entirely proper. *Page 460 
We note, however, that the trial court established a trust to be governed according to the terms of the unexecuted trust instrument, rather than according to the terms contained in the notes and mortgages. Because these documents, and not the trust instrument, are the legally operative instruments in this case, the trial court should conform its order to reflect, as closely as the law requires, the terms set forth in the notes and mortgages. The proceeds arising under the Harden and Tierce Transfers, however, were not transferred either by inter vivos trust or under "Item Two" of the will, and those proceeds must therefore be distributed according to any other applicable terms of the will or according to the applicable law. We therefore affirm in part, reverse in part, and remand this cause to the trial court to allow it to conform its order in accordance with the principles and findings outlined in this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and MADDOX and ALMON, JJ., concur.
BEATTY, J., concurs in result.
[1] The mortgage issued as a result of the Harden Transfer was subsequently re-executed, and a new mortgage document was issued and recorded. As with the previously executed mortgage, however, this subsequent mortgage contained no language indicating that the proceeds were to be held in trust for the Church.
[2] Although this provision of the will is poorly worded, the parties have treated the provision as an attempt to give the proceeds of the referenced mortgages, and we will do likewise, notwithstanding some ambiguity in the will's language.
[3] Our use of "devise" in reference to personalty is a recognition of the definition at Ala. Code (1975), § 43-8-1.
[4] One commentator has noted that Alabama law is confused as to whether a codicil republishes a will as of the date of the execution of the codicil, although this is the general rule. See Holt, Testate Succession in Alabama: Part I, 24 Ala.L.Rev. 221, 241-42 (1971). But see Reed v. Shipp, 293 Ala. 632,308 So.2d 705 (1975) (noting in dictum that Alabama follows the general rule that a codicil republishes a will as of the date of the codicil).
[5] The judgment that was entered in the trial court proceeded from a motion for a summary judgment on the documentary evidence stipulated to by the parties. Although we limit our review of the trial court's summary judgment to the evidence before it, "[o]ur reasoning, however, is not limited to that applied by the trial court," Hill v. Talladega College,502 So.2d 735, 737 (Ala. 1987). Thus, even where the trial court's legal reasoning is erroneous, the court's holding may nevertheless be sustained if the correct rules of law support the entry of a summary judgment. Id.; see Hoffman Schroeder,Burdens of Proof, 38 Ala.L.Rev. 31, 40-41 (1986).
[6] We have noted that "Item Two" of the will attempts to revoke these transfers. Although this "revocation" constitutes some evidence that the grantor did not intend a present transfer of the interests conveyed in the notes and mortgages issued as a result of the Hagler-Shirley Transfers, we do not regard this attempted revocation as fatal to the transfer in this case. A gratuitous transfer, once made, is irrevocable, see Pattersonv. Leonard, 240 Ala. 652, 200 So. 759 (1941), and our review of the evidence in this case convinces us that a valid inter vivos gift in trust was in fact made by the decedent. Consequently, this "revocation" has no legal effect on these transfers.